Rockingham
No. 79-383

THE STATE OF NEW HAMPSHIRE

v.

EDWARD PUGLIESE

November 13, 1980

*Gregory H. Smith,* acting attorney general (*Peter W. Heed,* assistant attorney general, orally), for the State.

*Upton, Sanders & Smith,* of Concord (*Russell F. Hilliard* orally), for the defendant.

PER CURIAM. This homicide case involving both a greater and a lesser-included offense presents two issues. The first question is whether the defendant's right not to be twice put in jeopardy was violated when the court declared a mistrial because of a hung jury without first asking the jury if they had reached a verdict on the greater offense. The second question is whether the court erred in

failing to charge the jury that the defendant could use deadly force in self-defense without retreating while outside his dwelling house but upon its grounds. We reverse.

The right not to be twice put in jeopardy is guaranteed under both the New Hampshire and United States Constitutions. N.H. CONST. pt. 1, art. 16; U.S. CONST. Amend. V. Although we draw upon decisions of the Supreme Court of the United States, we decide this case under the constitution of New Hampshire.

The defendant was charged with manslaughter. At his first trial, the Judge (*Mullavey*, J.) twice charged the jurors that if they found the defendant not guilty of manslaughter, then they should consider whether he was guilty of the lesser-included offense of negligent homicide. By these instructions, given without objection, the trial judge made it clear that the jury was not to consider the lesser offense unless it first considered the greater offense of manslaughter and found the defendant not guilty. We presume that the jury followed the court's instructions. The trial judge said nothing to the jurors about bringing in a verdict of not guilty on the greater charge even if they were unable to reach a verdict on the lesser charge. We cannot assume that they knew that they could so do. In fact, the court's charge could have led the jurors to believe that they could not.

After the jurors had deliberated for a time, they asked a question concerning manslaughter which the court answered. The next day the jury asked a question concerning negligent homicide which the court also answered. At the end of the second day of deliberation, the jurors informed the court that they could not reach a verdict. When the court indicated an intention to declare a mistrial, the defendant's attorney indicated opposition unless the court first asked the jury whether they had reached a verdict on the manslaughter charge. Counsel reasoned from the jury's questions and the court's instructions that it was possible that the jurors had reached a not guilty verdict on the greater charge and were unable to agree only on the lesser offense.

Whether the jurors had agreed, with finality, to acquit on the greater offense is not the question here. The questions on the double jeopardy issue are whether, without first inquiring what the jury had in fact done, there was a "manifest necessity" to declare a mistrial or whether the ends of public justice would otherwise be defeated if the trial court failed to discharge the jury. *United States v. Jorn*, 400 U.S. 470, 485 (1971); *United States v. Perez*, 22 U.S. (9 Wheat.) 579 (1824).

It is fundamental that under the double jeopardy clauses of

the New Hampshire and United States Constitutions the defendant has a "valued right to have his trial completed by a particular tribunal." *Arizona v. Washington*, 434 U.S. 497, 503 (1978), *quoting Wade v. Hunter*, 336 U.S. 684, 689 (1949). The law is clear that to preserve this "valued right", a judge may declare a mistrial without the defendant's consent only if there is a "manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez supra*.

In *Arizona v. Washington*, the United States Supreme Court concluded that there are degrees of necessity and held that a "high degree" of necessity is required to justify a mistrial without the consent of the defendant. 434 U.S. at 506. In the present case, it is clear that the defendant did not consent to the mistrial on the manslaughter charge without the inquiry he requested.

█ Not only did the trial court fail to expressly find a manifest necessity, but no such necessity could have been found. Nor would the ends of public justice have been defeated by simply asking the jury if they had reached a verdict on the manslaughter charge. If the answer had been in the negative, there would then have been a basis for the mistrial. If the answer had been that the jury had agreed on acquittal, then the defendant's "valued right" would have been upheld. There was no necessity at all, much less a high degree of necessity, to declare a mistrial before making the inquiry requested. All possible alternatives to a mistrial must be considered, employed and found wanting before declaration of a mistrial over the defendant's objection is justified. *See United States v. Jorn*, 400 U.S. at 486–87; *United States v. Kin Ping Cheung*, 485 F.2d 689, 691 (5th Cir. 1973). That was not done in this case. Consequently, the declaration of the mistrial on the manslaughter charge under the circumstances violated the defendant's double jeopardy rights and barred a retrial on that greater offense.

█ The defendant was retried on the manslaughter charge in violation of his right not to be put twice in jeopardy. At the second trial, the jury found him guilty of the lesser-included offense of negligent homicide. This verdict constituted an acquittal on the manslaughter charge. *Green v. United States*, 355 U.S. 184, 190 (1957). The fact that the jury did not convict the defendant of the greater offense, however, does not mean that the verdict on the lesser may stand. That conviction is invalid and must be vacated. *See Price v. Georgia*, 398 U.S. 323 (1970). Although the defendant may now be retried on the negligent homicide charge, he cannot be retried for manslaughter.

Because the issue is likely to arise again on retrial, we also address the defendant's argument concerning self-defense. *See Hayes v. State*, 109 N.H. 353, 356, 252 A.2d 431, 433–34 (1969). The defendant asserts that he was entitled to an instruction that he could properly employ deadly force in the defense of his person while in his home, or upon his immediately adjacent grounds. The State, on the other hand, argues that the defendant was not entitled to such an instruction because New Hampshire statutory law requires a person to retreat from an attacker except where "he is *in his dwelling* . . . ." RSA 627:4 III(a) (emphasis added). In support of its claim, the State points to uncontroverted evidence that the fatal struggle between the defendant and the decedent took place on the defendant's beach at some distance from his cottage.

The common-law rule was that a person attacked in his own home need not retreat but could stand his ground and defend himself, even to the point of employing deadly force against his assailant. *State v. Grierson*, 96 N.H. 36, 40, 69 A.2d 851, 854 (1949). Indeed, it was this rule, as restated in *Grierson*, that was codified in RSA 627:4 III. The State maintains that the term "dwelling" as used in the statute limits a person's privilege to use deadly force to those occasions when he is attacked within the four walls of the dwelling structure. We disagree.

The common-law exception to the retreat rule applied to attacks occurring in the home, or within the "curtilage." R. PERKINS, CRIMINAL LAW 1010 (2d ed. 1969); Annot., 52 A.L.R.2d 1458, 1459 (1959). This court's use of the term "home" in *Grierson* does not constitute a judicial constriction of the extent of a person's right to defend himself without first retreating. In a similar context, we construed a person's home to include the buildings and grounds within the curtilage, defining the latter term as including "those outbuildings which are directly and intimately connected with the habitation and in proximity thereto . . . and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment." *State v. Hanson*, 113 N.H. 689, 690–91, 313 A.2d 730, 732 (1973) (citations omitted).

We are not persuaded that the legislature's use of the term "dwelling" was meant to restrict the common-law privilege to use deadly force in self-defense without retreating. Absent a clearer legislative indication, we will not construe a statute to change the common law. *See State v. Thaxton*, 120 N.H. 526, 419 A.2d 392 (1980); *State v. Mullen*, 119 N.H. 703, 406 A.2d 698 (1979). Thus,

we agree that the defendant was entitled to an instruction that he could properly employ deadly force in defense of his person without retreating while outside his house but upon its grounds.

We are unable to determine on the record before us whether the area where the altercation occurred was within the curtilage of the defendant's home but leave that to be determined on retrial.

*Reversed and remanded for new trial on negligent homicide charge.*

BOIS, J., dissented; the others concurred.

BOIS, J., dissenting: I disagree with that part of the decision which reverses the trial court in its declaration of a mistrial because of the jury's inability to reach a verdict.

The law is clear that every time a defendant is put to trial before a competent jury, he is not entitled to go free if the trial ends in a mistrial. "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. (Citations omitted.) It is also clear that '[t]his Court has long favored the rule of discretion in the trial judge . . .' and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion." *Gori v. United States*, 367 U.S. 364, 368 (1961).

In *State v. Donovan*, 120 N.H. 603, 419 A.2d 1102 (1980), we recently reaffirmed our faith in our trial court's exercise of sound discretion. Accordingly, I can see no reason why, under the circumstances in this case, we should depart from our holding therein. To do so may inhibit the conscientious exercise of its judgment in finding that there is manifest necessity for the act, or that the ends of justice would otherwise be defeated.