Rockingham
No. 79-473

THE STATE OF NEW HAMPSHIRE

v.

EILEEN M. BRADY & a.

December 29, 1980

*Gregory H. Smith,* acting attorney general (*Brian T. Tucker,* attorney, orally), for the State.

*Robert Cushing, Jr.,* pro se, and *Benjamin Hiller,* of Massachusetts (on rebuttal), for the defendants.

DOUGLAS, J. The sole issue in this case is whether double jeopardy precludes retrial of the defendants after the trial judge, on his own motion, declared a mistrial before their criminal cases were submitted to the jury. We hold that it does not.

As a result of their participation in a demonstration at the construction site of the Seabrook nuclear power plant, the defendants were charged with criminal trespass under RSA 635:2. A jury trial before *Mullavey*, J., began on May 7, 1979. After the third day of trial, the judge excused the jury for the day, correctly told the defendants that they would not be allowed to use the competing harms defense (RSA 627:3), and advised them to read the contempt decision in *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 385 A.2d 851 (1978).

On the following day, May 11, 1979, the defendants appeared before *Mullavey*, J., to contest the order prohibiting the defendants' use of the competing harms defense. During the course of arguments on that issue, the judge found the defendant Robert Cushing in contempt of court and declared a mistrial on the ground that the actions of Cushing "would render the continuance of [the trial] unfair to the remaining defendants." Later that day, the court vacated the contempt order.

The case of the defendant Martha Brickett was scheduled for retrial in December 1979, but all six defendants filed motions to dismiss, alleging double jeopardy. *Bean*, J., denied the motions and ordered a stay of the trials pending appeal of that issue to this court.

Both the New Hampshire and United States Constitutions protect a defendant from double jeopardy. U.S. CONST. Amend. V; N.H. CONST. pt. 1, art. 16. Although United States Supreme Court decisions construing the federal constitution are not necessarily binding on this court in construing the State constitution, *State v. Hogg*, 118 N.H. 262, 264, 385 A.2d 844, 845 (1978), in the situation before us the constitutional analysis is similar. *See State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319 (1980). We therefore address the questions of violations of both constitutions as one.

Trial courts have discretion to declare a mistrial "whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 579 (1824); *State v. Pugliese, supra* at 728, 422 A.2d at 1321. The defendants argue that there was no "manifest necessity" for declaration of a mistrial in this case.

■ One circumstance in which a judge may declare a mistrial is when he finds that the actions of one of the parties or counsel have biased the jury. *Arizona v. Washington*, 434 U.S. 497, 510–11 (1978). It was apparently on that basis that the trial judge in this case declared a mistrial. The record reveals that there was tension between the trial judge and the defendant Cushing from the first day of the trial. Cushing did not think that the judge would afford the defendants a fair trial. It was not until the third day, however, that Cushing's disagreement with the judge's rulings began to manifest itself in open argument with the court. At the end of that day, the judge recommended that the defendants read a case dealing with contempt of court. When it became clear on the following day that Cushing would not abide by the rulings of the court, the judge held him in contempt and declared a mistrial.

■ Having considered the record, we think that the judge correctly discerned that the situation had escalated to the point where Cushing's obvious hostility to the judge's rulings could not help but influence the jury. Because the trial judge has heard the tone of the arguments and observed the reaction of the jurors, his determination that the impartiality of the jury was being affected should be accorded great deference by a reviewing court. *Arizona v. Washington, supra* at 511–14.

■■ The defendants argue the trial court's decision cannot be upheld because the judge did not exercise sound discretion by considering all the alternatives before declaring a mistrial. *See id.* at 514. Before he declares a mistrial, a trial judge need not expressly find a manifest necessity nor specifically state that he has considered all the alternatives and found none adequate. *See Arizona v. Washington, supra* at 501–03. Obviously, the best procedure would be to do so. *See State v. Pugliese*, 120 N.H. at 728, 422 A.2d at 1321. Although we agree that the judge ruled quickly, the record does not lead us to conclude that he acted without consideration. The fact that the judge told the defendants to read a case on contempt indicates that he was aware of the defendants' possible reactions to his ruling prohibiting use of the competing harms defense. Indeed, Cushing's statement that the trial was "reminiscent of a kangaroo court" justified the court's concern and made it clear that Cushing's courtroom conduct was not about to cease. It is clear from the record that the judge had no reasonable alternative but to declare a mistrial. Severance of Cushing's case from that of the other defendants was not a viable solution because the prejudicial effect of his actions on the jury extended to the

other defendants. *See Scott v. United States*, 202 F.2d 354, 355 (D.C. Cir.), *cert. denied*, 344 U.S. 879, and *sub nom. Bayne v. United States*, 344 U.S. 881 (1952); *Jones v. Commonwealth*, 387 N.E.2d 1187, 1194–95 (Mass. App. Ct. 1979).

██ ██ Finally, the defendants argue that before declaring a mistrial the trial judge should have considered their right to "a tribunal . . . [they] might believe to be favorably disposed to . . . [their] fate." *United States v. Jorn*, 400 U.S. 470, 486 (1971). The Supreme Court has said that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter*, 336 U.S. 684, 689 (1949). Thus, even if the defendants had wanted to continue the trial with a jury that the judge thought was biased against them, they did not have an absolute right to do so. *Arizona v. Washington*, 434 U.S. at 516. We conclude that the judge was basically motivated by his concern that the defendants have a fair trial, and that he ruled in their "sole interest[s]" in declaring the mistrial. *See Gori v. United States*, 367 U.S. 364, 369 (1961).

██ The trial court's determination that the jury's impartiality was impaired indicates not only that there was a "manifest necessity" to declare a mistrial but also that "the ends of public justice would otherwise be defeated" if it were not declared. Accordingly, there is no double jeopardy bar to retrial of the defendants.

*Affirmed; remanded.*

BOIS, J., did not sit; the others concurred.