Edward A. PUGLIESE

v.

Everett I. PERRIN, Warden, New Hampshire; Gregory Smith, Attorney General, State of New Hampshire.

Civ. No. 83–97–D.

United States District Court,
D. New Hampshire.

July 15, 1983.

John Gilbert Upton, Concord, N.H., for plaintiff.

Brian T. Tucker, Asst. Atty. Gen., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

Six years ago, on July 11, 1977, Edward Pugliese killed Denis Champagne on a darkened beach adjoining the Pugliese home in Northwood, New Hampshire. Petitioner has since been tried twice for manslaughter and three times for negligent homicide, in three separate trials. At each trial, the prosecution sought to prove that Pugliese threatened to kill and in fact killed Champagne because he believed that Champagne was having an affair with his wife. At each trial Pugliese admitted to the stabbing. Pugliese maintained that Champagne had threatened his life and that he was attempting to defend himself and his son against a man with a well-known reputation for and history of violent acts.

The case was appealed twice to the New Hampshire Supreme Court on the grounds of double jeopardy. After his final conviction for negligent homicide was affirmed,

petitioner filed this petition for a writ of habeas corpus, 28 U.S.C. § 2254, claiming that the trial judge's instruction that proof of negligence was satisfied by evidence of purposeful, knowing, or reckless conduct was precluded by the doctrine of collateral estoppel and that his conviction was therefore obtained in violation of the Double Jeopardy Clause of the United States Constitution. Upon review of the trial transcripts and appellate record in all three cases, the Court concludes that, under the singular facts of this case, the trial court's instructions at the trial did violate petitioner's rights under the Double Jeopardy Clause.[1] Accordingly, for the reasons set forth below, the writ shall issue.

\* \* \*

The unusual procedural history of this case is determinative of the collateral estoppel/double jeopardy question. For that reason, it is set out here in some detail.

Petitioner first went on trial in October of 1978. He was charged with manslaughter. At the close of the evidence the jury was instructed on manslaughter and on the lesser offense of negligent homicide. Tr. (1978) Vol. II, pp. 204–14. The jury was instructed not to consider the negligent homicide charge unless it had found that petitioner was not guilty of the manslaughter charge. *Id.*, p. 210. On the second day of deliberation, the jury requested additional instructions on negligent homicide. Two hours later, the jury indicated that it was unable to reach a verdict. The trial court declared a mistrial, denying defense counsel's request that the jurors be asked whether they had reached a verdict on the manslaughter charge. Certified Record of New Hampshire Supreme Court, No. 79–383, Attachment 5, p. 2.

Petitioner was retried for manslaughter in April of 1979. Prior to trial, petitioner moved to dismiss the manslaughter indictment on double jeopardy grounds. The motion was denied. *Id.*, Attachment 1, Reserved Case, pp. 14–15. He was acquitted of manslaughter and convicted of negligent homicide. *See* Indictment and Verdict Slip. On appeal, the New Hampshire Supreme Court held, in a *per curiam* opinion, that there had been no "manifest necessity" to declare a mistrial on the manslaughter charge in the first trial and that retrial on the manslaughter charge had placed petitioner in double jeopardy in violation of the New Hampshire Constitution. *State v. Pugliese,* 120 N.H. 728, 422 A.2d 1319 (1980). The Court remanded the case for retrial on the negligent homicide charge.[2] Because the case was remanded for retrial, the Court also addressed petitioner's argument regarding the trial court's self defense instruction on the duty to retreat, and ruled that the defendant was entitled to an instruction that he could properly employ deadly force in defense of his person without retreating while outside his house but upon its grounds. *Id.*

Petitioner's third trial before the Rockingham County Superior Court began in May of 1981. Prior to trial, petitioner sought and obtained the Court's permission to enter a formal plea of self defense. The State had no objection to the plea. The State also moved prior to trial for an instruction that negligent homicide could be established not only by proof of negligent conduct, but by proof of reckless, knowing, or purposeful conduct. Although the trial judge initially indicated that he was inclined to deny the motion,[3] he did give the

---

1. Petitioner also claims that error of constitutional magnitude was committed when the trial court refused to poll the jury concerning allegedly prejudicial newspaper articles published during the course of trial. In light of the disposition of the petition on other grounds, it is not necessary to reach this ground for relief.

2. Petitioner has not argued, either here or before the New Hampshire Supreme Court, that retrial on the negligent homicide charge would violate the Double Jeopardy Clause.

3. The judge stated:
   Actually I don't have to rule on the requests at this time and we are going to trial. The facts might reveal something differently. I

requested instruction at the close of trial,[4] over petitioner's renewed objection and exception. Petitioner was convicted of negligent homicide and sentenced to a term of three and one-half to seven years in the New Hampshire State Prison. The conviction was affirmed on appeal. *State v. Pugliese,* 122 N.H. 1141, 455 A.2d 1018 (1982).

The significance of the trial court's decision to give the tendered instruction can only be appreciated in the context of the applicable provisions of New Hampshire's criminal code. There are five types of criminal homicide in New Hampshire: capital murder, first degree murder, second degree murder, manslaughter, and negligent homicide. N.H. RSA 630:1–630:3 (Supp. 1981). The primary distinction between the various degrees of homicide centers on the actor's mental state, i.e., whether the act was purposeful, knowing, reckless, or negligent. A person is guilty of manslaughter if he or she recklessly causes the death of another. N.H. RSA 630:2 I(b). A person is guilty of negligent homicide if he or she negligently causes the death of another. N.H. RSA 630:3. The difference between reckless and negligent conduct turns on the actor's awareness of the risk created.

> A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk. RSA 626:2 II(c). The risk must be such that, considering the circumstances known to

him, its disregard constitutes a gross deviation from the conduct that law-abiding persons would observe in the situation. *Id.*

> On the other hand, a person acts negligently when he fails to become aware of a substantial and unjustifiable risk. RSA 626:2 II(d). The risk must be such that a failure to become aware of it constitutes a gross deviation from the conduct that a reasonable person would observe in the situation. *Id.*

*State v. Cameron,* 121 N.H. 348, 350, 430 A.2d 138, 139 (1981).

New Hampshire law also provides, however, that negligence may also be established by proof of any of the higher mental states.

> When the law provides that negligence suffices to establish an element of an offense, such element is also established if the person acts purposely, knowingly or recklessly. When recklessness suffices, the element is also established if the person acts purposely or knowingly. When acting knowingly suffices, the element is also established if a person acts purposely.

N.H. RSA 626:2 III. In reliance on this provision of the statute, the State requested the challenged instruction. Petitioner argues here, as he did in the courts of the State of New Hampshire,[5] that the prior

---

probably won't have to be confronted, just the same, I would like to know a little in advance. At quick brush I am inclined to agree with the defendant. What we have got here is negligent homicide or isn't it? The statute specifically states what negligent homicide is and what negligence is. I feel that that is what my charge is going to be about. As far as this purposely and recklessly, particularly recklessly, it has already been disposed. It could be double jeopardy. I don't want to go back to the Supreme Court again. It has been going on since 1977. I want to try to avoid any further litigation. It is not good for the State and it is not good for the defendant.

Tr. (1981) Vol. I, pp. 17–18.

**4.** In addition to a charge defining negligent homicide under the statute, the judge also instructed the jury:

The State must prove beyond a reasonable doubt that the killing was not justifiable. Further, when the law provides that negligence suffices to establish an element of an offense such element is also established if the State proves beyond a reasonable doubt that a person acted purposely, knowingly, or recklessly.

Tr. (1981) Vol. IV, pp. 542–43. The judge then instructed the jury on the definition of each of the mental states under New Hampshire law.

**5.** As defense counsel stated at trial:

It might be we are not writing on a clear slate .... If this were the first time around I'm not sure we would have a valid objection but subject to the other claims raised in the written motion, but where there has been a prior trial on the ground of recklessly you are subjecting the defendant to a finding of guilty

acquittal of the charge of manslaughter collaterally estopped the State from relitigating his guilt on the basis of the "higher" mental states, and that the instruction therefore violated his rights under the Double Jeopardy Clause.

\*　　\*　　\*

■ Collateral estoppel "is embodied in the Fifth Amendment guarantee against double jeopardy . . . [which] protects a man who has been acquitted from having to 'run the gauntlet' a second time". *Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970) *quoting Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957).[6]

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States, supra,* at 187–88, 78 S.Ct. at 223. So, too, "[a] verdict of not guilty, whether rendered by a jury or directed by the trial judge, absolutely shields the defendant from retrial". *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) (and cases cited at n. 11); *see also Lydon v. Justices of the Boston Municipal Court,* 698 F.2d 1, 8 (1st Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct.

3535, 76 L.Ed.2d —— (1983). So, too, the Double Jeopardy Clause precludes relitigation of any issue of ultimate fact finally determined by a valid judgment of acquittal. *Ashe v. Swenson, supra* 397 U.S. at 443, 90 S.Ct. at 1194; *Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972).

■ By acquitting the petitioner of manslaughter in 1979, the jury acquitted petitioner of reckless homicide.[7] N.H. RSA 626:2 III. Once acquitted of manslaughter, petitioner could not be tried for a reckless, knowing, or purposeful killing again. *See* N.H. RSA 626:2 III. The trial court's instruction on recklessness, like the instruction given at the 1979 trial, *see* Tr. (1979) Vol. III, p. 132, permitted the jury to convict petitioner on the basis of a finding of recklessness. The State maintains here that the instruction was intended only to avoid "the spectre that the jury would find petitioner *not* guilty because it found him *too* guilty". Brief for Respondents, p. 7 (emphasis in original). A prior jury had already found petitioner not guilty of being "too guilty", however, and the State was therefore estopped from making repeated "attempts to relitigate the facts underlying a prior acquittal". *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977).

■ Respondents contend that collateral estoppel did not apply in this case because negligence was all the jury could or did find. "[C]ollateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and

---

on a basis that he has previously been acquitted on. That is the problem I have. If writing on a clean slate and for the first time on the matter of State v. Pugliese subject to my other point your point would be well taken. It isn't a clear slate and there has been an acquittal on that ground and that is the reason we are back again. I think it becomes a matter of double jeopardy again if you force Pugliese to defend himself against that higher degree of culpability.

Tr. (1981) Vol. I, p. 16.

**6.** The United States Constitution, Amendment V, provides in pertinent part, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb".

**7.** The fact that petitioner successfully appealed his 1979 conviction for negligent homicide does not affect the validity of the judgment of acquittal for purposes of double jeopardy analysis. *Benton v. Maryland,* 395 U.S. 784, 796–97, 89 S.Ct. 2056, 2063–64, 23 L.Ed.2d 707 (1969).

rationality". *Ashe v. Swenson, supra* 397 U.S. at 444, 90 S.Ct. at 1194. New Hampshire's statutory provisions concerning proof of negligence, N.H. RSA 626:2 III, *supra,* provides respondents with a neat semantic argument, but it is no more than semantic. A realistic review of this record establishes that the question of recklessness was tried twice.[8]

■ Nor does the Court concur in respondents' argument that a finding of negligence is necessarily subsumed by a finding of recklessness. Negligence requires a showing of a lack of awareness of a risk, while recklessness concerns a conscious disregard of a known risk. *State v. Cameron, supra;* N.H. RSA 626:2 II(c), (d). The two offenses would thus be mutually exclusive, except for the amalgamating effect of N.H. RSA 626:2 III. Because of the prior acquittal, however, the State could not invoke the statutory provision, and avenues of proof which might otherwise have been available were foreclosed. *See Green v. United States, supra* 355 U.S. at 194, n. 14, 78 S.Ct. at 227, n. 14. The net result is that if the jury in the 1981 trial concluded that petitioner acted with an awareness of the risk created, it would have been duty bound, if properly instructed, to acquit the petitioner of negligent homicide. This scenario might create the risk of some confusion to a jury, as respondents here maintain. Whatever confusion arises is, however, inherent in the case once the State chooses to pursue a conviction for negligent homicide. Petitioner cannot be faulted for defending himself once the State has chosen to prosecute.

■ These considerations also compel the conclusion that the error was not harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The jury here may have found petitioner guilty of reckless conduct. Indeed, the record discloses that the instruction was requested precisely because the State had as strong if not a stronger case for purposeful or reckless conduct than for purely negligent conduct.[9] The prosecutor argued as much to the jury.[10] Alternatively, the jury, faced with a charge of reckless conduct on the one hand, and the defense of self defense on the other, may have compromised on a finding of simple negligence rather than continuing to debate petitioner's innocence. *See Price v. Georgia,* 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 (1970). This is precisely the spectre the New Hampshire Supreme Court attempted to avoid by remanding the case for retrial on negligent homicide only. *State v. Pugliese, supra,* 120 N.H. at 730, 422 A.2d at 1321. Under either scenario, the error is not harmless. *Price v. Georgia, supra; Benton v. Maryland, supra.*

The New Hampshire Supreme Court found, however, that the error was harmless because petitioner put intentional conduct into issue by raising the defense of self defense and by permitting evidence of threats by the petitioner against the victim to be introduced without objection. *State v. Pugliese, supra* 122 N.H. at 1146–47, 455 A.2d at 1021–22. The New Hampshire Supreme Court held that petitioner was not

---

8. In fact, the issue of recklessness was tried three times including the first mistrial.

9. The State argued in the motion hearing:
   The State intends to prove that he did it negligently. *From our proof the jury could believe something else.* We are asking for an instruction, and I believe it is perfectly consonant with the law that says to the jury if you believe that the State has proved, although it didn't intend to prove, some higher mental state then they have also proved negligence. . . . *What we are afraid of is if the jury says he didn't negligently kill him he purposely, he must, therefore, not be guilty*

of negligent homicide. We don't want confusion on that score. That is the reason we want that instruction.
Tr. (1981) Vol. I, pp. 13–15 (emphasis added).

10. *I suggest to you that we have proved in this case something more then [sic] simple negligence.* But I don't want you to be confused by that because as the Judge will instruct if we have proved more than negligence, if we have shown that the defendant in this case acted purposely or knowingly or recklessly we have also shown that he has acted negligently.
Tr. (1981) Vol. IV, p. 512 (emphasis added).

prejudiced and could not complain of being forced to relitigate any factual issues because he voluntarily placed the issue of intentional conduct back into the case. *Id.* Respondents urge this Court to so hold as well.

As a procedural matter, this reasoning meets with considerable difficulty. Petitioner came to his third trial armed with a New Hampshire Supreme Court opinion which held that he could not be retried for reckless homicide (manslaughter), and an equally favorable ruling concerning his requested self defense instruction. It was the prosecution which by independently-filed pretrial motion first raised the issue of reckless conduct. The instruction was requested because it supported the prosecution's theory of the case. *See* n. 9, *supra.* Petitioner did not proceed to trial until he had obtained a ruling from the trial judge that he could enter his plea of self defense and that the prosecution's requested instruction was viewed with disfavor. There was no indication that by raising self defense he would jeopardize his double jeopardy claim. In fact, all indications were to the contrary.

Nor was there any indication that evidentiary objection or requests for limiting instructions would be necessary, since the jury, if instructed as petitioner requested, could draw no impermissible conclusions. Moreover, the evidence that petitioner threatened the victim (a fact which he denied) was plainly relevant to the issue of self defense. New Hampshire law places the burden of disproving self defense on the State, N.H. RSA 626:7 I(a); N.H. RSA 627:1, and evidence of threats was therefore probative of whether petitioner "reasonably believed" Champagne was "about to use deadly force" and whether petitioner "was not the initial aggressor". N.H. RSA 627:4 III(a). More importantly, petitioner's col-

lateral estoppel claim was not then and is not now aimed at the exclusion of evidence. *Compare United States v. Keller,* 624 F.2d 1154 (3d Cir.1980) (*"Keller"*); *Wingate v. Wainwright,* 464 F.2d 209, 214 (4th Cir. 1972) (*"Wingate"*). The claim is and has been directed at barring a reprosecution directly based on relitigating findings of ultimate fact permissibly, though not necessarily, drawn from that evidence, *see Ashe v. Swenson, supra.* The New Hampshire Supreme Court's citation of *Keller* and *Wingate* is therefore inapposite.

As a matter of constitutional law, the result urged wreaks a forfeiture fundamentally at odds with the Double Jeopardy Clause. The crux of respondents' position, as gleaned from the New Hampshire Supreme Court opinion, is that by pleading self defense, petitioner implicitly admitted to intentional conduct and thereby foreswore any claim that he was forced to relitigate the issue of an intentional or reckless homicide; any harm to petitioner was therefore inflicted by his own hand. "The Double Jeopardy Clause of the Fifth Amendment is written in terms of potential risk of trial *and conviction"*, however. *Price v. Georgia, supra* 398 U.S. at 329, 90 S.Ct. at 1761 (emphasis added). The error here is not harmless in the sense that petitioner could only be convicted of simple negligence. To the contrary, respondents ask the Court to hold that the error is harmless precisely because the instruction assisted the jury in analyzing the evidence of reckless or intentional conduct so as to convict *on that basis.*

■ Arguably, a criminal defendant could waive his double jeopardy claim, but there is no voluntary or intentional relinquishment of Fifth Amendment rights here.[11] *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461

---

11. The New Hampshire Supreme Court originally held that due to defendant's failure to object to evidence of intentional conduct, he was "therefore deemed to have waived his right to object to the relitigation of the higher mental states". Upon motion for rehearing, a modified opinion was issued deleting this sentence, but otherwise leaving the opinion substantially intact.

(1938); *Lydon v. Justices of the Boston Municipal Court, supra* at 1–10. Whether or not the plea of self defense constituted a tacit admission of intentional conduct—a proposition of state law as to which the Court expresses no opinion—is not the issue. Even an *explicit* admission of factual guilt will not waive an otherwise preserved double jeopardy claim. *Menna v. New York,* 423 U.S. 61, 62–63 & n. 2, 96 S.Ct. 241, 242 & n. 2, 46 L.Ed.2d 195 (1975) (guilty plea does not constitute waiver of double jeopardy claim). Here, petitioner vigorously objected throughout the relitigation of the higher mental states. He "did not 'elect' to undergo successive trials" on the issue of reckless homicide. *Sanabria v. United States,* 437 U.S. 54, 77, 98 S.Ct. 2170, 2185, 57 L.Ed.2d 43 (1978).

The bottom line is that petitioner, albeit in hindsight, has been forced to elect between preserving a valid double jeopardy claim and mounting his sole defense to a charge of homicide. "The law should not, and in our judgment does not, place the defendant in such an incredible dilemma." *Green v. United States, supra,* 355 U.S. at 193, 78 S.Ct. at 226. In *Green* the United States Supreme Court held that "[c]onditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy". *Id.* at 193–94, 78 S.Ct. at 226–27; *see also Benton v. Maryland, supra.* Similarly, conditioning the presentation of a defense to a crime on the involuntary abdication of a valid collateral estoppel/double jeopardy plea exacts an equally untenable penalty.

A noted orator and lawyer of the fourth century B.C. put the matter simply. "[T]he laws forbid the same man to be tried twice on the same issue." 1 Demosthenes 589 (J. Vince trans., 4th ed. 1970). The State had had two opportunities to prove a reckless homicide. It sought and obtained a third. It should have had only one.

Accordingly, the writ shall issue in thirty days unless by that time respondents have either appealed this Order within the time provided by the federal rules or reinstated proceedings against petitioner. The Clerk shall enter judgment without undue delay.

SO ORDERED.