John J. FITZGERALD,

v.

Roger G. LILE, Judge.

No. 5:89CV2456.

United States District Court,
N.D. Ohio, E.D.

Feb. 13, 1990.

Thomas W. Fox, New Philadelphia, Ohio, for petitioner.

Scott Mastin, Office of the Tuscarawas County Prosecutor, New Philadelphia, Ohio, for respondent.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION.

This habeas corpus action raises a novel double jeopardy issue. The petitioner was indicted in the Common Pleas Court of Tuscarawas County, Ohio, for aggravated vehicular homicide. The petitioner's first trial ended with the declaration of a mistrial after the jury informed the trial judge that it was unable to reach agreement. After the jury was discharged, it was learned that the jury had apparently agreed to acquit the petitioner of the indicted charge, but was unable to agree on a verdict as to the lesser offense of vehicular homicide. Petitioner contends that retrial on the charge of aggravated vehicular homicide will subject him to double jeopardy in violation of the 5th and 14th amendments to the United States Constitution.[1]

This case presents the issue of whether the manifest necessity principles that justify a mistrial and retrial without violating a defendant's double jeopardy rights impose on the trial court the duty to engage in a *sua sponte* inquiry of the jury concerning the state of its deliberations where the jury has been submitted one or more lesser included offenses. The Court finds no such duty and accordingly declines to issue the writ.

### II. BACKGROUND.

On January 12–14, 1989, petitioner was tried on a one count indictment of violating Ohio Revised Code (ORC) Section 2903.06 (aggravated vehicular homicide). The trial judge, Judge Roger G. Lile, instructed the jury on the aggravated vehicular homicide charge and on the lesser included offense

---

1. Petitioner's case was originally scheduled for retrial on December 28, 1989. Judge Lile ordered that case be continued until a later date because of petitioner's habeas petition pending before this Court.

of vehicular homicide, ORC Section 2903.-07. The jurors were given two separate verdict forms, one for the aggravated vehicular homicide charge and one for the vehicular homicide charge.[2] The jurors commenced deliberations at approximately 9:00 p.m. on January 13, 1989, and after three hours of deliberations, the jury was returned to the courtroom. The trial judge asked the forelady of the jury "if there is a possibility of reaching an agreement in a reasonable amount of time" and prior to any response, cautioned the forelady not to indicate the status of the deliberations. The following exchange then occurred:

BY THE FORELADY:

May I ask one question?

BY THE COURT:

A Yes.

BY THE FORELADY:

Unanimous decision?

BY THE COURT:

Yes. Again, this is a case,—it's a criminal case. My instructions previously given that any decision in the case on any of the questions must be unanimous. Now, don't give me an indication of what is occurring now. My question is,—and I understand it's late,—you have been at this now for over three hours. There are times, I appreciate the fact, that you may not want to come back tomorrow but my question is, is there a possibility with an overnight rest, coming in tomorrow at 8:30, with fresh minds, that you might be able to continue your discussions?

BY THE FORELADY:

No.

BY THE COURT:

May I see counsel? ...

The respondent then sent the jury back to the jury room to consider the respondent's question on the issue of whether an "agreement" could be reached. An hour later, the jury returned and the following colloquy took place:

BY THE COURT:

Mrs. Boggiani, my question to you again, at this time, would be that,—is there a possibility that after an additional period of time, that you may be able to reach an agreement in this case?

BY THE FORELADY:

No, Your Honor.

The trial judge declared a mistrial after the two discussions with the forelady of the jury. The petitioner neither moved for nor objected to the grant of a mistrial. However, after the jury was discharged, a completed jury verdict form signed by all twelve jurors and finding the petitioner "not guilty" on the aggravated vehicular homicide charge was discovered in the jury room by the court's bailiff. At a post-trial hearing, the jury forelady testified that the jury deliberated about thirty minutes on the aggravated vehicular homicide charge before signing the not guilty verdict and spent the remaining time debating the lesser included offense of vehicular homicide.

Petitioner does not contend that the trial judge knew that the jurors had decided the aggravated vehicular homicide charge when he dismissed the jurors due to their inability to come to an "agreement." Petitioner argues that the judge's failure to inquire whether the jurors had decided the indicted charge demonstrates that the trial judge lacked adequate grounds for the "manifest necessity" needed to support his

2. The jurors were to initially find the petitioner either guilty or not guilty on the aggravated vehicular homicide offense and to sign the verdict form on that offense before considering the next verdict form which contained the lesser included offense of vehicular homicide. The second verdict form similarly provided a place for the jurors to indicate whether they found the petitioner guilty or not guilty of vehicular homicide. Finally, if the jurors found the petitioner guilty of either charge, they were to determine on a third form entitled "Additional Finding" whether the petitioner was under the influence of alcohol at the time of the offense. Under this scenario, the jury would have been obligated to return at least two of the forms to announce its verdict if it had reached a complete verdict.

Traditionally, where there is a single count with a lesser included offense, the jury would be given three verdict forms with the admonition to return only one of the forms and where the three forms would be, as an example, in this case: guilty of aggravated vehicular homicide; not guilty of aggravated vehicular homicide but guilty of the lesser offense of vehicular homicide; and not guilty. The language of the "Additional Finding" could be inserted in either of the two guilty verdict forms.

decision to declare a mistrial. In his habeas application, petitioner contends that his retrial on the aggravated vehicular homicide charge is barred by his former jeopardy at the January 14, 1989 trial pursuant to the Fifth Amendment to the United States Constitution, made applicable to the states by way of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).[3]

### III. PROCEDURAL BACKGROUND.

Petitioner's application for the writ of habeas corpus is properly before the Court pursuant to 28 U.S.C. Section 2254(b) because the petitioner has exhausted his state court remedies. The trial court denied a motion for acquittal, which was affirmed by Ohio's Fifth District Court of Appeals. Regrettably, the Ohio Supreme Court by a 5–2 vote dismissed petitioner's appeal *sua sponte* based upon the lack of a substantial constitutional question.

■ The general rule of non-interference with pending state criminal prosecutions does not apply when there are exceptional circumstances demonstrating the possibility of "both great and immediate" irreparable injury. *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 752, 27 L.Ed.2d 669 (1971). A colorable double jeopardy claim may constitute the threat of injury necessary to fall within the exceptions to *Younger. See Willhauck v. Flanagan,* 448 U.S. 1323, 101 S.Ct. 10, 65 L.Ed.2d 1147 (1980) (Brennan, J. sitting as Circuit Judge on Application for Stay) (the double jeopardy clause guarantees against twice being subject to the ordeal of *trial,* as well as punishment); *Abney v. United States,* 431 U.S. 651, 661, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977); *Doe v. Donovan,* 747 F.2d 42, 44 (1st Cir.1984).

### DISCUSSION

The petitioner asserts three arguments in support of his habeas petition: (1) the state court of appeals was in error concerning the requirements of accepting partial verdicts; (2) the trial judge lacked the "manifest necessity" to declare a mistrial because he failed to inquire of the jury whether it had reached a verdict on each included offense; (3) the signed but unannounced jury verdict was a final manifestation of the jury's intent to acquit the petitioner of the aggravated vehicular homicide offense. The petitioner argues that to retry him places him in double jeopardy. The Respondent, through the offices of the county prosecuting attorney, has moved to dismiss the petition for the writ of habeas corpus because no final verdict was ever presented to the court in the prior criminal trial and the facts do not demonstrate a violation of the petitioner's 5th amendment double jeopardy rights.

### A. *The Trial Court's Obligation to Accept a Partial Verdict.*

Ohio's Fifth District Court of Appeals denied the petitioner's appeal, reasoning that when a defendant is charged with a single offense with lesser included offenses, a verdict cannot be reached until there is agreement on the indicted offense *and* the lesser included offenses. *State of Ohio v. Fitzgerald,* No. 89–AP–020016, slip op. at 5, 1989 WL 100118 (Ohio Ct.App. August 22, 1989). In a case involving multiple indicted offenses, the Sixth Circuit held that there was no manifest necessity to grant a mistrial where the jury announced in open court that it had reached agreement on four out of five of the charged offenses. *Wallace v. Havener,* 552 F.2d 721 (6th Cir.1977), *cert. denied,* 434 U.S. 940, 98 S.Ct. 433, 54 L.Ed.2d 300 (1977). In *Wallace,* the trial judge denied a defense counsel request that the jurors be instructed to return the four verdicts they had reached. The Sixth Circuit affirmed the district court's grant of habeas relief to prevent the defendant's retrial on the four offenses that the jurors agreed based upon double jeopardy because the trial judge

---

**3.** Petitioner appears to argue that Ohio lacks the right to retry him on the lesser included offense of vehicular homicide. The Court does not agree and notes that if a writ were to issue in this case, the writ would only apply to the greater offense of aggravated vehicular homicide, not the lesser included offense of vehicular homicide.

should have accepted the partial verdicts. *Wallace*, 552 F.2d at 724.

The Ohio Court of Appeals decision cites no authority for the proposition that a jury cannot render a partial verdict in a single count indictment when there are lesser included offenses. Other courts, when considering the issue, focus upon the manifest necessity grounds for the trial judge's decision to grant a mistrial in that setting. *See*, for example, *Stone v. Superior Court of San Diego County*, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982); *People v. Hickey*, 103 Mich.App. 350, 303 N.W.2d 19 (1981).

**B.** *The Nature of the Trial Court's Duty to Inquire as to the Status of Deliberations Concerning Included Offenses.*

 The petitioner's post-discharge demand that the trial court accept the signed but unannounced jury verdict form as a partial verdict is anchored in the claim that the trial judge lacked the "manifest necessity" to declare a mistrial because the judge did not poll the jury concerning the deliberations on the aggravated manslaughter charge.

The Court now considers the trial judge's duty, if any, to inquire when lesser included offenses have been submitted to the jury before granting a mistrial. The test of a trial court's discretion to grant a mistrial was first announced in *United States v. Perez*, 22 U.S.(9 Wheat) 579, 6 L.Ed. 165 (1824):

> We think that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be defeated.

"Manifest necessity" has served as a polestar of the principle that judges must not grant *sua sponte* mistrials unless a "scrupulous exercise of judicial discretion" leads to the conclusion that no worthwhile purpose would be served by continuing the proceedings. *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971); *Wallace v. Havener, supra.*

The court in *Doe v. Donovan*, 747 F.2d 42 (1st Cir.1984), was faced with a fact situation similar to the petitioner's. Doe, a juvenile, was charged with two offenses, first degree murder and illegal possession of a firearm. The jury was charged on the lesser offenses of second degree murder and manslaughter and given four verdict forms to consider as to the homicide charge. Although a verdict was returned on the firearm charge, the jury foreman told the trial judge that no verdict could be reached on the murder charge. Unlike the present case, Doe's attorney requested that, before declaration of a mistrial, the trial judge inquire whether the jury had reached a verdict on any of the charges included in the murder complaint. Over Doe's objections, the trial judge declared a mistrial as to the complaint's murder charge. After the jury was discharged, a court officer discovered signed verdict forms finding Doe not guilty of first and second degree murder. Doe sought habeas relief in the federal courts after she exhausted her state appeals. On procedural grounds, the First Circuit found that Doe had not demonstrated irreparable harm because as a juvenile, Doe would in all likelihood be released when she reached the age of 18, regardless of whether she was convicted of first degree murder or manslaughter. However, the court framed the substantive issue in the following manner:

> Although we have no need to reach the merits of appellant's broader claim that the double jeopardy clause prohibits declaration of a mistrial without first inquiring of the jury whether it has reached verdicts on each included offense, we acknowledge that it raises serious questions. The issue has been discussed by the appellate courts of nine states, including as a result of this action, the Commonwealth of Massachusetts. In support of appellant's position, *see Stone v. Superior Court of San Diego County*, 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1983); *State v. Pugliese*, 120 N.H. 728, 422 A.2d 1319 (1980); *State v. Castrillo*, 90 N.M. 608, 566 P.2d 1146 (1977). *But see State v. Booker*, 306

N.C. 302, 293 S.E.2d 78 (1982); *People v. Hickey,* 103 Mich.App. 350, 303 N.W.2d 19 (1981); *People v. Hall,* 25 Ill.App.3d 992, 324 N.E.2d 50 (1975); *Walters v. State,* 255 Ark. 904, 503 S.W.2d 895 (1974); *State v. Hutter,* 145 Neb. 798, 18 N.W.2d 203 (1945). The Massachusetts Supreme Judicial Court found against appellant on this issue. *A Juvenile v. Commonwealth,* 392 Mass. 52, 465 N.E.2d 240 (1984). *Doe v. Donovan,* 747 F.2d at 44, f. 1.

The petitioner urges the Court to follow those cases that require a trial judge to inquire about agreement on any charge before declaring a mistrial and that absent such inquiry, a trial judge's declaration of a mistrial is without manifest necessity.

In *State v. Castrillo, supra,* the defendant was charged with first degree murder, and the trial judge instructed the jury on the lesser included offenses of second degree murder and manslaughter. The trial court declared a mistrial after the jury foreman informed the court that the jury was deadlocked. Neither the trial judge or the foreman referred to the specific charges.

The Supreme Court of New Mexico held that the defendant's retrial for first and second degree murder was barred by double jeopardy, although the defendant could be retried for manslaughter. The court reasoned that at a minimum the jury was deadlocked over the least of the lesser included offenses, i.e. manslaughter. However, with regard to the first and second degree murder charges, the court held that the trial court had a duty to investigate whether or not the jury had reached a decision on the greater offenses and announced the following rule:

> Without inquiry by the trial court into the jury's deliberations on the greater,

included offenses, no necessity is manifest to declare a mistrial as to those offenses and thus jeopardy has attached. *State v. Castrillo,* 566 P.2d at 1152.[4]

*Doe v. Donovan, supra,* also cites a California Supreme Court decision as support for the rule that trial judges are required to inquire as to the status of a jury deliberations prior to granting a mistrial when there are lesser included offenses. *Stone v. Superior Court of San Diego County,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809 (1982). However, *Stone* involved the grant of a mistrial over defendant's objections after the foreman twice declared in open court that the jury stood 12–0 on first and second degree murder charges, but could not agree on a lesser included manslaughter charge. The *Stone* court expressly distinguished an earlier California Supreme Court case, *People v. Griffin,* 66 Cal.3d 459, 58 Cal.Rptr. 107, 426 P.2d 507 (1967), wherein the judge was given no indication of how the jurors stood until after the judge had declared a mistrial and discharged the jury. The *Griffin* court refused to imply a jury verdict where there was no partial verdict offered to the trial judge and, as in the present case, where there was no evidence that the trial judge knew that the jurors had reached a partial verdict.

In *State v. Pugliese, supra,* the defendant was charged with manslaughter and the lesser included offense of negligent homicide. The trial judge instructed the jury to consider the manslaughter charge first, and if they found the defendant not guilty, then to consider the lesser included offense of negligent homicide. During the course of their deliberations, the jury submitted a question pertaining to the negligent homicide charge. The jury eventually indicated that it could not reach a verdict and the judge indicated his intention to grant a mistrial. The defendant opposed

---

**4.** In announcing the *Castrillo* rule, the New Mexico Supreme Court gratuitously declared that the deposition testimony from the jury foreman offered in support of the defendant's allegation that the jury had voted unanimously to acquit the defendant of the first and second degree murder charges was inadmissible. However, this Court seriously doubts whether the *Castrillo* court would have reached the same result in a situation where there was *no* evidence to show that the jurors had voted to acquit the defendant on at least one of the greater offenses. In the present case, counsel for the petitioner conceded that without the signed verdict form, he would not have pursued an appeal and an application for the habeas writ on the basis of an improper decision to grant a mistrial.

the mistrial unless the court asked the jury if they had reached a verdict on the manslaughter charge. The judge denied the defendant's request and granted the mistrial.

■ The Supreme Court of New Hampshire held that to retry the defendant on the greater offense would place him in double jeopardy. The court concluded that the trial judge did not fully examine whether there was a manifest necessity to grant the mistrial because the trial judge did not question the jury about the status of the deliberations on the manslaughter charge. The *Pugliese* court reasoned that the question concerning the lesser offense should have caused the trial judge to inquire about the greater offense before granting a mistrial. *State v. Pugliese*, 120 N.H. at 731, 422 A.2d at 1321. In the present case, no similar jury question "triggered" the duty to inquire. When reviewing whether or not there was manifest necessity for the mistrial, the Court must only consider the pre-discharge knowledge of the trial judge. The Court rejects discovery of the signed, unannounced verdict as a relevant factor to be considered when assessing whether or not the trial judge erred in granting the mistrial.

Although there is merit to the petitioner's argument that a trial judge must accept a partial verdict when rendered, *Wallace v. Havener, supra,* the petitioner seeks to impose a duty upon a trial judge, before granting a mistrial, to inquire each time there are included offenses. According to the *Castrillo* case, failure to inquire results in an acquittal for the defendant

due to the lack of manifest necessity for the mistrial.[5]

However, the Court finds no such *sua sponte* inquiry is required by the double jeopardy provisions of the United States Constitution where there is no suggestion that the jury may have reached a partial verdict. The issue of whether "manifest necessity" dictated the declaration of a mistrial must be addressed at the time the mistrial is declared. To adopt a rule which would allow post-discharge revelations from some or all of the jurors about the state of their deliberations with respect to the stated charge and the lesser offenses would create endless confusion and controversy where a mistrial has been declared after the jury has announced that it is unable to agree.[6] For good and sound reasons uniformly accepted, a jury ceases to exist as an instrumentality of the justice system once it has been discharged. Historically, where a jury declares it is unable to reach a verdict, it has been discharged and a new trial ordered without any claim being recognized that the defendant's right to be free of double jeopardy has been violated. *United States v. Perez*, 22 U.S. (9 Wheat) at 579; *Illinois v. Somerville*, 410 U.S. 458, 463, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425 (1972).

In this case, petitioner's counsel has candidly admitted in argument before this Court that but for the discovery of the completed verdict after the jury's discharge and the forelady's subsequent testimony about the action of the jury, the petitioner would not have pursued the double jeopardy issue. The Court does not agree with the petitioner's claim that the signed jury verdict form is a final and binding verdict

5. Before discharging the jury after the jury has announced an inability to reach a decision and where the jury has one or more lesser included offenses for consideration, the court could submit additional forms with the admonition to only complete one and where the forms would read alternatively: We find the defendant not guilty of A (stated crime) but we are unable to agree on B (lesser included offense); We find the defendant not guilty of A and B, but we are unable to agree on C (more than one lesser included offense); or We are unable to agree on a verdict as to the charged offense or any of the lesser offenses.

6. Additionally, the petitioner claims that the jurors failed to submit the signed verdict form on the greater offense because the trial judge, when asking about the status of the deliberations, chose the word "agreement" rather than "verdict" which allegedly led the jury to believe that a partial verdict could not be rendered. The Court observes that even when courts ask if there is a verdict, the jury foreman may still fail to indicate that a partial verdict has been reached. *See A Juvenile v. Commonwealth, supra* (Trial court asked if there was a "verdict" and the jury announced that it could not reach a "verdict"); *People v. Hickey, supra.*

on the aggravated vehicular homicide offense. Ohio Criminal Rule 31(A) requires that the verdict must be unanimous, in writing, signed by all the jurors and "returned by the jury to the judge in open court." The policy of a verdict returned in open court is supported by the right to poll the jury in open court, which is a right both parties possess and one the trial judge may exercise *sua sponte.* Ohio Criminal Rule 31(D). The Massachusetts Supreme Court upheld the trial court's decision to refuse to accept signed jury verdicts discovered in the jury room after a jury was dismissed as deadlocked because of the state's interest in receiving a certain and final verdict, evidenced by the requirement that a verdict must be returned in open court. *A Juvenile v. Commonwealth,* 392 Mass. 52, 465 N.E.2d 240 (1984). Not only the state, but all parties rely upon the certainty of a jury verdict returned in open court, and the Court will not engage in findings of fact to determine post-trial whether or not the former members of a jury will ratify what appears to be an undeclared verdict. For this Court to declare as it is being requested by the petitioner, that the double jeopardy provisions of the Constitution require a trial judge to *sua sponte* inquire of the jury by some method with respect to the possibility that it has determined that the defendant is not guilty of the charged offense but is unable to agree on a lesser offense would put a gloss on the double jeopardy provisions not heretofore recognized in the federal system. Such an extension of the double jeopardy protections should come, if it is to be, initially from a higher court. The Court's acceptance of petitioner's position by granting the writ would throw into confusion every homicide prosecution in the State of Ohio where a jury has been discharged after announcing that it was unable to reach a verdict. Moreover, the Court's position is supported by the majority of jurisdictions that have considered the issue.[7] For example, in *People v. Hickey,* 103 Mich.App. 350, 303 N.W.2d 19 (1981), the jury was instructed that it could return one of four separate verdicts: guilty of first degree murder,

guilty of second degree murder, guilty of manslaughter or not guilty. After the foreman indicated that the jury could not reach a verdict, the trial judge declared a mistrial without asking the jury where they stood on lesser included offenses, over the defendant's objection.

The Michigan court refused to adopt the *Castrello* position because polling the jury on possible verdicts "would constitute an unwarranted and unwise intrusion into the province of the jury." *People v. Hickey,* 303 N.W.2d at 21. The court stated that as a practical matter jury verdicts were often the result of compromise and warned against giving effect to a jury's earlier vote when a final verdict as to all counts was not returned. *Id.* The Massachusetts' decision that led to the habeas application in *Doe v. Donovan, supra,* refused to give effect to a signed verdict form discovered after the jury was discharged in part because absent a final adjudication, the jurors were entitled to change their minds on a verdict. *A Juvenile v. Commonwealth,* 392 Mass. 52, 465 N.E.2d 240, 244 (Mass. 1984).

## IV. CONCLUSION.

Based upon the foregoing reasons, the Court holds that in this case the trial judge had no *sua sponte* duty to inquire about the status of the jury's deliberations beyond the inquiry that he made prior to discharging the jury. The petitioner's application for the writ of habeas corpus is denied and dismissed.

IT IS SO ORDERED.

---

7. *See* cases cited *supra* at p. 7. *See* also *State v.* *Despenza,* 38 Wash.App. 645, 689 P.2d 87 (1984).