Hillsborough-southern judicial district
No. 95-038

THE STATE OF NEW HAMPSHIRE

v.

MARYANN PAQUIN

December 19, 1995

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*Paul J. Garrity*, of Londonderry, by brief and orally, for the defendant.

THAYER, J. The defendant, Maryann Paquin, appeals the Superior Court's (*Hampsey*, J.) denial of her motion to dismiss two indictments charging her with selling cocaine. *See* RSA 318-B:2 (1995). During her previous trial on the same indictments, the Superior Court (*Hampsey*, J.) declared a mistrial after learning that the jury foreperson took notes in violation of the court's instructions. We must decide whether the trial court erred in holding that neither the State nor the federal constitutional prohibitions against double jeopardy bar retrial. We reverse.

The defendant's first trial on the two indictments was a short one, with the jury beginning its deliberations after only one day of testimony. At some point during the jury's second day of deliberations, court officers informed the trial court that jurors were relying on notes taken by the jury foreperson during closing arguments and the judge's instructions. Jurors had been told when they were empaneled that taking notes was prohibited.

The trial court immediately called the foreperson into chambers and, in the presence of counsel for the State and the defendant, questioned her about the notes. In response to the court's questions, the jury foreperson admitted that she took notes but claimed that she was unaware such conduct was prohibited. She also admitted sharing her notes with other members of the jury.

Following the interview with the foreperson, the trial court met privately with the lawyers. There is no record of the meeting, but

both parties agree the State contended that the sharing of notes in the deliberation room required a mistrial. The defendant's lawyer objected, arguing that the jury should proceed with its deliberations. As an alternative to a mistrial, defense counsel suggested the court *voir dire* other members of the jury to determine whether the deliberations were actually tainted. The trial court concluded, however, that the juror misconduct necessitated a mistrial and excused the jury.

Later that day, the trial court held a hearing on the record on the State's request for a mistrial. The parties attempted to recreate the arguments they had made during the meeting in chambers. Defense counsel repeated his argument that the trial court erred in ordering a mistrial because it had not considered less drastic alternatives. The trial court disagreed, explaining that the juror's notes inherently tainted the deliberation process and rendered an impartial verdict impossible. The court said:

> I appreciate [defense counsel's] point but I think counsel doesn't appreciate the purity and the sanctity and the fairness of the jury deliberation process that we're trying to protect. It is sufficient that the juror acknowledge taking these notes . . . during the closing arguments. It is sufficient that this is in direct conflict with the instructions that that juror received . . . . It is sufficient that she told the Court in chambers that she had shared these with the other members of the jury during the deliberation process. That gives rise to sufficient cause to protect the system . . . which means [a] jury deliberation process untainted by such . . . clear juror misconduct.

At the end of the hearing, the trial court formally granted a mistrial. In its written order, the court again stated that the juror's note-taking amounted to serious juror misconduct which inherently tainted the jury process and "compelled" a mistrial.

Following that ruling, the defendant moved to dismiss the two indictments, arguing that a retrial would violate the double jeopardy clauses of the State and Federal Constitutions. After a hearing, the trial court denied the defendant's motion. This appeal followed.

We begin by considering the defendant's State constitutional claim, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only as an aid to our analysis. *Id.* at 233, 471 A.2d at 352. Because we conclude that the defendant is entitled to relief under the State Constitution, we do not reach her federal claim.

The double jeopardy clause of the New Hampshire Constitution provides that a defendant cannot be put in jeopardy for the

same offense more than once. N.H. CONST. pt. I, art. 16; *State v. Pugliese*, 120 N.H. 728, 729, 422 A.2d 1319, 1320 (1980). A defendant is put in jeopardy at the moment a jury is empaneled and sworn, *State v. King*, 131 N.H. 173, 176, 551 A.2d 973, 975 (1988), and the double jeopardy clause provides a defendant with the right to have his or her trial completed by that jury. *See Pugliese*, 120 N.H. at 729-30, 422 A.2d at 1321.

■ In order to preserve the right to have an empaneled jury decide a case, a trial court may declare a mistrial over the defendant's objection, without jeopardizing retrial, "only if there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *See id.* at 730, 422 A.2d at 1321 (quotation omitted). Therefore, the issue we must decide is whether the trial court's decision to grant a mistrial was supported by manifest necessity or the ends of public justice. If the trial court abused its discretion in concluding that manifest necessity required a mistrial, then the double jeopardy clause will bar retrial. *State v. Bertrand*, 133 N.H. 843, 850-51, 587 A.2d 1219, 1224 (1991).

The trial court concluded that a mistrial was necessary because it believed the foreperson's notes inherently prejudiced the jury. As it explained during the mistrial hearing, the notes created inherent prejudice because they contained the foreperson's interpretation of two critical parts of the trial—closing arguments and the judge's charge—and were shared with other members of the jury. The trial court did not investigate whether and to what extent the notes and the discussion of them caused actual prejudice to the jury deliberative process because he was satisfied that an impartial verdict was impossible and that a mistrial was necessary.

■ While it is true that the foreperson's notes were the only set of notes in the deliberation room, were shared with other members of the jury, and were taken during closing arguments and the judge's instructions, those facts standing alone do not demonstrate the need for a mistrial. *See Pugliese*, 120 N.H. at 730, 422 A.2d at 1321. Other jurisdictions have held that a single set of notes—or a particularly strong set of notes—in the deliberation room, even when shared with other jurors, does not automatically make an impartial verdict impossible. *See, e.g., Esaw v. Friedman*, 586 A.2d 1164, 1169 (Conn. 1991) (no prejudice results when a juror with particularly strong notes shares those notes during deliberations); *United States v. Dynalectric Co.*, 859 F.2d 1559, 1582 (11th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989); *see also* 3 AMERICAN BAR ASSOCIATION STANDARDS FOR CRIMINAL JUSTICE § 15-3.2 commentary at 15-85 (2d ed. 1980) (ABA STANDARDS). Those courts

explain that even without notes in the jury room, "[i]t is likely that certain jurors will be more influential with their colleagues than others." *Esaw*, 586 A.2d at 1169; *see also Com. v. St. Germain*, 408 N.E.2d 1358, 1367 n.22 (Mass. 1980); ABA STANDARDS, *supra* § 15-3.2 commentary at 15-86. Therefore, even if notes may influence jurors, they do not necessarily cause prejudice as they do not change the normal deliberative process.

Moreover, many courts allow jurors to take notes during opening and closing arguments and the judge's instructions. *E.g., United States v. Porter*, 764 F.2d 1, 12 (1st Cir. 1985) (trial court did not abuse its discretion in allowing jurors to take notes during opening statements, closing statements, and the charge to the jury); *St. Germain*, 408 N.E.2d at 1365-66 (interpreting a state court rule authorizing note-taking during closing arguments and the judge's instructions). Even in those jurisdictions that prohibit note-taking by law, a juror's decision to take notes during the judge's instructions does not automatically taint the deliberation process and warrant a new trial. *See Com. v. Maute*, 485 A.2d 1138, 1144 (Pa. Super. Ct. 1984).

■ Because in this case merely taking notes and sharing them with other jurors was insufficient as a matter of law to justify a mistrial, the trial court should have considered whether and to what extent the deliberative process was affected by the foreperson's conduct, *see id.* (if jury members take notes in violation of state law, a defendant is entitled to new trial if he can show prejudice), and whether alternatives to a mistrial could have neutralized any prejudicial effect the notes may have had on jury members. *Pugliese*, 120 N.H. at 730, 422 A.2d at 1321. Since the trial court failed to make either inquiry, no manifest necessity is demonstrated, and the court abused its discretion when it ordered a mistrial. *See id.*

Accordingly, we hold that the double jeopardy clause bars further prosecution of the defendant on the original indictments.

*Reversed.*

BRODERICK, J., did not sit; the others concurred.