Rockingham
No. 97-888

## THE STATE OF NEW HAMPSHIRE

v.

## ALLEN D. GOULD

December 8, 1999

*Philip T. McLaughlin*, attorney general (*N. William Delker*, assistant attorney general, on the brief and orally), for the State.

*Stephen T. Jeffco, P.A.*, of Portsmouth (*Stephen T. Jeffco* and *Harry N. Starbranch* on the brief, and *Mr. Starbranch* orally), for the defendant.

BRODERICK, J. The defendant, Allen D. Gould, was charged with four counts of felonious sexual assault. RSA 632-A:3, III (1996). At trial, the Superior Court (*Gray*, J.) granted the State's mistrial motion after the defendant made a remark that the court found to be a deliberate attempt to influence the jury. Prior to the defendant's retrial, the superior court denied the defendant's motion to dismiss, ruling that the double jeopardy provisions of the Federal and State Constitutions did not bar a second trial. We reverse.

The defendant's trial for felonious sexual assault began on January 6, 1997. As the defendant approached the witness stand to testify the following day, the trial judge heard him say, "It's about time!" The judge immediately excused the jury and expressed his belief that the defendant "deliberately waited until [he] got right in front of the jury before [he] made that comment in a deliberate attempt to influence the jury." After asking the prosecutor if he wanted a mistrial, the judge reprimanded the defendant and informed his counsel that he would be charged with contempt if he did not control his client. Thereafter, the court recessed to determine if the jury heard the defendant's remark. After a six-minute recess, the judge announced that the jury had, in fact, heard the defendant. He reiterated his opinion that the defendant's behavior was intended to prejudice the jury and, in response to the State's motion, granted a mistrial.

On appeal, the defendant argues that because "manifest necessity" did not exist, the trial court abused its discretion in declaring a mistrial. He asserts that a retrial would violate the double jeopardy provisions of the New Hampshire and United States Constitutions, which forbid placing a person twice in jeopardy for the same offense. N.H. CONST. pt. I, art. 16.; U.S. CONST. amend. V.

■ ■ We first analyze the defendant's double jeopardy claim under the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350-51 (1983), and use federal law only as a guide to our analysis. *See State v. Paquin*, 140 N.H. 525, 527, 668 A.2d 47, 49 (1995). We confine our double jeopardy analysis to the State Constitution because the United States Constitution affords the defendant no greater protection. *See State v. Ringuette*, 142 N.H. 163, 165, 697 A.2d 507, 509 (1997). The Double Jeopardy Clause of the New Hampshire Constitution as interpreted by this court provides that a defendant may not be twice placed in jeopardy for the same offense. *See id.* Because a defendant is put in jeopardy at the moment a jury is empaneled and sworn, *see id.*, the constitution recognizes the defendant's "'valued right' to have his trial completed by a particular tribunal." *State v. Bertrand*, 133 N.H. 843, 853, 587 A.2d 1219, 1225 (1991). When this "valued right" is frustrated by the declaration of a mistrial without the defendant's consent, the prosecution must demonstrate that the mistrial was justified by "manifest necessity." *See Brady v. Samaha*, 667 F.2d 224, 228 (1st Cir. 1981). Absent such proof, a retrial is barred.

The power to declare a mistrial without the defendant's consent should be exercised only "with the greatest caution, under urgent

circumstances, and for very plain and obvious causes." *Bertrand*, 133 N.H. at 853, 587 A.2d at 1226 (quotation omitted). Although a high degree of necessity is required before a mistrial is declared, "manifest necessity" is a variable standard which cannot be applied mechanically. *See id.* at 853, 587 A.2d at 1225.

Although we generally defer to a trial court's discretion in declaring a mistrial, especially where the defendant's conduct triggered its declaration, *see Pleas v. State*, 495 S.E.2d 4, 6 (Ga. 1998)("the trial court . . . is especially empowered to avoid the absurdity of a defendant benefitting from the prejudicial error he created"), it is our duty to ensure that the "scrupulous exercise of judicial discretion led to the decision." *Brady*, 667 F.2d at 229 (quotations omitted). Whether the trial court allowed counsel to comment on a proposed mistrial, considered other alternatives, or made a decision without sufficient reflection are all important factors to be considered. *See United States v. Simonetti*, 998 F.2d 39, 41 (1st Cir. 1993). Failure of a trial court to exercise such prudence may reflect an inadequate concern for a defendant's constitutional protections, and therefore diminish the deference otherwise due the trial court's ruling. *See Brady*, 667 F.2d at 229.

In this case, we are unable to determine whether the trial court exercised the requisite discretion so essential to a mistrial order. *See id.* It is undisputed that the court terminated the trial very quickly, failed to discuss lesser sanctions with counsel, and took little time for reflection. While the trial court was appropriately irritated with the defendant's intemperate remark, this alone cannot justify the infringement of a defendant's constitutional right to a trial before the sworn tribunal. *See Simonetti*, 998 F.2d at 41. Although the trial court spoke with the jury, its colloquy was off the record. We do not know what the jury was asked nor how it responded. Whether a curative instruction would have been suffi- cient to remedy any perceived prejudice or whether it was ever considered is unknown. Accordingly, we owe no particular deference to the trial court's mistrial order, and review the record de novo to determine whether, on its face, the defendant's conduct created the requisite manifest necessity to justify a mistrial. *See Brady*, 667 F.2d at 229.

Although the trial court viewed the defendant's remark as a deliberate attempt to influence the jury, we are not persuaded that his words were inherently prejudicial. The defendant's comment is capable of more than one interpretation. He could have been expressing frustration as a result of waiting a day to testify,

commenting on the credibility of those who had testified before him, or vouching for his own credibility. We cannot conclude, however, that the defendant's remark, although inappropriate, left the trial court with no meaningful choice other than a mistrial. *See Paquin*, 140 N.H. at 529, 668 A.2d at 50 (trial court should ascertain and consider whether the jury was prejudiced by conduct that is insufficient as a matter of law to justify a mistrial). The trial court is obliged to ensure that the jury has in fact been prejudiced, *see id.* at 528, 668 A.2d at 50, and to exhaust all reasonable alternatives to remove any jury taint before declaring a mistrial. *See State v. Pugliese*, 120 N.H. 728, 730, 422 A.2d 1319, 1321 (1980). On the record before us we cannot state that this occurred.

■ At best, the record reflects a defendant intent on causing a mistrial but does not contain evidence of "manifest necessity" so essential to its declaration. We discern no circumstance on the face of the record supporting a mistrial and find no record evidence of actual prejudice. Because the record is silent on the jury's reaction to the defendant's remark and contains no explanation from the trial court as to why or whether lesser sanctions would have been ineffective, we are left to speculate whether manifest necessity existed. We cannot let a mistrial stand where its justification is neither obvious nor supported by record evidence of actual, incurable prejudice.

While we appreciate that "a criminal trial is, even in the best of circumstances, a complicated affair to manage," *United States v. Jorn*, 400 U.S. 470, 479 (1971), a mistrial is of such gravity and implicates such a fundamental constitutional right that we will defer to a trial court's finding of manifest necessity only where the record affirmatively supports it. Because it is uncertain whether the trial court exercised sound discretion in declaring a mistrial and the record does not independently support it, the trial court's order cannot stand. *See Paquin*, 140 N.H. at 529, 668 A.2d at 50 (jury foreperson taking notes in violation of instructions was not manifest necessity); *Pugliese*, 120 N.H. at 730, 422 A.2d at 1321 (where jury considered manslaughter and lesser-included offense of negligent homicide, hung jury not manifest necessity requiring mistrial before inquiring whether jury had reached verdict on greater offense of manslaughter).

Finally, in accordance with our general superintendence power under RSA 490:4 and Part II, Article 73(a) of the New Hampshire Constitution, *see Opinion of the Justices (Judicial Salary Suspension)*, 140 N.H. 297, 300, 666 A.2d 523, 525 (1995), we direct that, in

the future, all communications between the trial court and jury before the jury is excused occur on the record. *Cf. State v. Alexander*, 143 N.H. 216, 227, 723 A.2d 22, 30 (1998) (directing that no face-to-face communications between the judge and jury prior to the verdict occur in the jury room absent extraordinary circumstances).

*Reversed.*

All concurred.