Original
No. 2000-184

## PETITION OF GERALD BROSSEAU

April 24, 2001

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Lancaster, (*Leonard D. Harden* on the brief and orally), for the defendant.

BRODERICK, J. The petitioner, Gerald Brosseau, seeks a writ of certiorari from orders of the Superior Court (*Fitzgerald*, J.) denying his motion to dismiss and his interlocutory appeal filed after his trial ended in a mistrial. The petitioner contends that the mistrial was granted in the absence of "manifest necessity" and that a retrial would violate the double jeopardy provisions of the New Hampshire and United States Constitutions. *See* N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V. We granted a stay of the retrial pending our decision on the petition. We deny the petition, vacate the stay and remand.

The following facts were adduced at trial. In December 1998, following an altercation between the thirteen-year-old victim and his brother, the defendant became frustrated and grabbed the victim. The defendant is the victim's father. According to the victim, when he pulled away the defendant pinned him against a wall,

started yelling and hit him in the stomach. The victim fell to the floor, and when he did not get up as commanded, the defendant kicked him lightly several times in the side. As the victim got to his hands and knees to stand up, the defendant kicked him in the face. The victim fell to the floor and his nose began to bleed. After cleaning himself up, he walked to the police station and reported the assault.

The investigating officer spoke by telephone with the defendant. At trial, the officer testified that the defendant admitted that he had "slapped [the victim] around a little, and he wasn't proud of that." In a subsequent conversation, he told the officer that he may have hit his son in the buttocks with a cane and may have kicked him there as well. The defendant also admitted striking his son with his fist. The defendant was ultimately arrested for simple assault.

Prior to trial, the prosecutor and defense counsel apparently agreed that the victim's alleged use of marijuana would not be brought to the jury's attention and defense counsel so instructed his client. At trial, the defendant did not deny the physical altercation with his son, but contended that he had engaged in a lawful act of corporal punishment against an out-of-control child. In his opening statement, defense counsel informed the jury that during the six months prior to the charged incident, the victim had shown dramatic changes in his behavior. Counsel claimed that the victim's embellished version of the altercation was the fabrication of an angry son lashing out at his father.

During the defendant's direct examination, he testified about the problems he experienced with the victim in the summer of 1998 and his attempts to get him help. When asked whether he noticed changes in his son's behavior the defendant responded:

> He became real belligerent, and he wouldn't be around us, he would stay away, he would hide in his room and not come out. Then I would ask his mom where he was, and he wouldn't get up. He would sleep all day. And I didn't realize that he was into marijuana and all of that until we found out later.

The State promptly moved for a mistrial and a chambers conference occurred off the record. The trial court then conducted a hearing in open court without the jury present. The defendant objected to the mistrial motion and suggested a curative instruction. He argued that the jury should be told that its deliberations should focus solely on the charged crime or, alternatively, that the jury be told to disregard any testimony about marijuana use. The State

countered that the prejudice could not be cured by an instruction because the defense strategy had been to cast the victim as a "bad person." The State also contends in its brief that failure to grant a mistrial would have rewarded the defendant for violating the pretrial agreement.

The trial court found "manifest necessity" for a mistrial explaining that (1) the court and the State, at least, understood that there was to be no mention of marijuana use at trial, (2) the defendant was instructed by his counsel not to mention marijuana use, (3) no curative instruction could eradicate prejudice to the State because the defense strategy had been to paint the victim as a "bad person," and (4) if a fully curative instruction were given it would state that there was no basis to believe the victim had used marijuana which, in turn, might unfairly undermine the defendant's credibility with the jury.

On appeal, the defendant argues that a curative instruction would have removed any possible prejudice and that, at a minimum, the trial court should have conducted a *voir dire* of the jury before declaring a mistrial. The State asserts that the trial court properly found "manifest necessity" in the sound exercise of its discretion.

We first address the defendant's claims under the State Constitution, employing federal cases only to aid in our analysis. *See State v. Ball*, 124 N.H. 226, 231 (1983). Because the New Hampshire Constitution is at least as protective as the Federal Constitution in this area, we need not make a separate federal analysis. *See In re Mello*, 145 N.H. 358, 360 (2000).

■■ A mistrial should be granted only "with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *State v. Bertrand*, 133 N.H. 843, 854 (1991) (quotation omitted). Although a high degree of necessity is needed to declare a mistrial, "manifest necessity is a variable standard that cannot be applied mechanically." *State v. Gould*, 144 N.H. 415, 417 (1999) (quotation omitted).

When reviewing a mistrial order on appeal, we generally defer to a trial court's exercise of discretion, "especially where the defendant's conduct triggered its declaration." *Id.* We have, however, cautioned trial courts not to terminate trials too quickly, encouraging them to discuss lesser sanctions with counsel and to take time for reflection. *See id.* Here, the record reveals that the trial court did not act precipitously and, in fact, considered alternatives to ordering a mistrial. Because the trial court acted prudently, our deference due to the trial court's ruling is not diminished. *See id.*

■ On the record before us, we cannot state that the trial court's mistrial order was unreasonable. It is especially important to our analysis that the defendant created this predicament by interjecting into his testimony evidence that he had been told was inadmissible. While reasonable minds might differ on whether "manifest necessity" existed here, we are not persuaded that the court acted unreasonably or without plain and obvious causes. Ultimately, the trial court reasonably concluded that no fully curative, non-prejudicial instruction could be fashioned and that the defendant's disclosure created actual, incurable prejudice.

■ The defendant argues that the trial court was required to *voir dire* the jury before deciding whether a lesser sanction might cure any perceived prejudice. Such an undertaking may be advisable and in some cases encouraged, particularly where potential prejudice to the trial process is a result of juror conduct. *See, e.g., State v. Paquin*, 140 N.H. 525, 529 (1995). We do not, however, require jury *voir dire* as a prerequisite to declaring a mistrial in all cases. In this case, the trial court determined that a curative instruction would not remove the prejudicial impact of the defendant's testimony. Questioning the jurors about the prejudicial testimony could have exacerbated the prejudice and compounded the futility of a curative instruction.

Because we deny the petition for certiorari, we vacate the stay of the petitioner's retrial and remand the case to the trial court for further proceedings.

*Petition denied; stay vacated; and remanded.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.