Hillsborough-southern judicial district
No. 2008-509

## THE STATE OF NEW HAMPSHIRE

v.

## THOMAS HOWELL

Argued: April 16, 2009
Opinion Issued: May 15, 2009

*Kelly A. Ayotte*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. This is an interlocutory appeal from a ruling by the Superior Court (*Nicolosi*, J.), denying the defendant's motion to dismiss the indictments against him. *See* SUP. CT. R. 8. Because we conclude that prosecution of the indictments is not barred by double jeopardy, we affirm and remand.

The facts as presented in the interlocutory appeal statement are as follows. On August 17, 2005, the defendant, Thomas Howell, was indicted on four counts of aggravated felonious sexual assault (AFSA) under RSA 632-A:2, I(l) (2007). Three indictments alleged that the defendant, between 1984 and 1990, knowingly kissed the genitalia of A.K., who was under the age of thirteen at the time. The fourth indictment alleged that the defendant knowingly used his fingers to rub and touch the genitalia of A.K., who was under the age of thirteen.

The day of trial, at the State's request, the grand jury issued four superseding indictments for AFSA under RSA 632-A:2, II (2007). The new indictments alleged the same conduct, but substituted the *mens rea* of "purposely" in the place of "knowingly," and added the allegation that the defendant committed the acts "for the purpose of sexual arousal or gratification." The State entered a *nolle prosequi* on the first set of indictments, and the defendant proceeded to trial that day on the superseding indictments.

The Trial Court (*Hicks*, J.) impaneled a jury, the clerk swore them in and read the indictments. The parties gave opening statements and the State called A.K. as its first witness. After both parties questioned A.K., the defendant moved to dismiss, arguing that the provision of RSA 632-A:2 under which he was indicted was not enacted until 1992, two years after the charged conduct, and that the indictment thus failed to allege a crime. Both the State and trial court agreed that proceeding under RSA 632-A:2 would

constitute an *ex post facto* violation. At the State's request, and over the defendant's objection, the trial court declared a mistrial and dismissed the indictments.

On July 18, 2007, nineteen months after the dismissal, the State obtained new indictments alleging four counts of AFSA under RSA chapter 632-A (Supp. 1981) (amended 1986). Three indictments alleged that the defendant knowingly performed cunnilingus on a victim under the age of thirteen, and the fourth alleged that he knowingly engaged in digital penetration of a victim under the age of thirteen.

The defendant moved to dismiss the indictments, arguing they violate his right against double jeopardy and his right to a speedy trial. *See* U.S. CONST. amends. V, VI; N.H. CONST. pt. I, arts. 14, 16. After a hearing, the trial court denied his motions as well as his subsequent motion for reconsideration. The defendant sought interlocutory review of his claims. Pursuant to Supreme Court Rule 8, the superior court transferred two questions; we accepted only one:

> Whether the trial court incorrectly denied the defendant's motion to dismiss the subject indictments as in violation of his protections against double jeopardy articulated in Part I, Article 16 of the New Hampshire Constitution and the Fifth Amendment to the United States Constitution where the defendant was placed in jeopardy at the first trial, the defendant moved to dismiss the indictments at that trial based upon facts adduced at trial, the defendant could not have been convicted of the offense charged, and the State afforded itself a more favorable opportunity to convict the defendant with the present indictment.

We answer that double jeopardy does not bar reprosecution in this case, and that the trial court correctly denied the defendant's motion on that ground.

The defendant argues that because "manifest necessity" did not exist, the trial court erred in declaring a mistrial, and that the double jeopardy provisions of the United States and New Hampshire Constitutions therefore bar his retrial. *See* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16. Specifically, he argues that a prosecutor who makes a conscious, tactical decision that later proves unsuccessful, cannot then request a mistrial to try the case anew using a different strategy.

We first address the defendant's claim under the New Hampshire Constitution, citing federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 232-33 (1983).

■ In general, the Double Jeopardy Clause provides that a defendant may not be twice placed in jeopardy for the same offense. N.H. CONST. pt.

I, art. 16; *State v. Ringuette*, 142 N.H. 163, 165 (1997). As a corollary, "It is *fundamental* that . . . the defendant has a valued right to have his trial completed by a particular tribunal." *State v. Solomon*, 157 N.H. 47, 50 (2008) (quotation omitted). "The right to a particular tribunal is [a defendant's] right to complete a trial with a chosen jury, once sworn, or a particular judge, once evidence has commenced." *Id.* The right exists because

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*State v. Bertrand*, 133 N.H. 843, 853 (1991) (quotation omitted).

■ The right "does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." *Illinois v. Somerville*, 410 U.S. 458, 470 (1973). The defendant's valued right "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.* (quotation and emphasis omitted). "The determination by the trial court to abort a criminal proceeding where jeopardy has attached is not one to be lightly undertaken," *id.* at 471, and "should be exercised only with the greatest caution, under urgent circumstances, and for very plain and obvious cases." *Solomon*, 157 N.H. at 50-51 (quotation omitted). When a trial ends in mistrial, a defendant can be retried only if he consents to the mistrial, or, if he objects, upon a finding of the trial court that there is "manifest necessity for the act, or [that] the ends of public justice would otherwise be defeated." *Bertrand*, 133 N.H. at 853; *see State v. Gould*, 144 N.H. 415, 416 (1999).

■ Manifest necessity is a variable standard, which turns upon the particular facts of a case, and which cannot be applied through rigid, mechanical rules. *See Somerville*, 410 U.S. at 464, 467; *Gould*, 144 N.H. at 417. A trial court must therefore take all circumstances into account, and should allow counsel to comment as well as consider alternatives before declaring a mistrial. *Somerville*, 410 U.S. at 462; *Gould*, 144 N.H. at 417.

Where the trial court clearly indicates on the record its findings and reasoning, we generally defer to its declaration of a mistrial. *Gould*, 144 N.H. at 417. If, however, the trial court fails to make any findings or state its reasoning on the record, or otherwise fails to exercise prudence in declaring a mistrial, our deference is diminished. *Id.* In such instances,

because "a mistrial is of such gravity and implicates such a fundamental constitutional right . . . [,] we will defer to a trial court's finding of manifest necessity only where the record affirmatively supports it." *Id.* at 418. Here, as discussed below, the trial court made findings and rulings on the record, and we therefore review its decision for an unsustainable exercise of discretion. *Solomon*, 157 N.H. at 51.

█ Although manifest necessity is not susceptible to precise categorization, one situation in which courts often find manifest necessity is that of a defective indictment. *See Somerville*, 410 U.S. at 459; *State v. Janvrin*, 121 N.H. 370, 371 (1981). In *Janvrin*, the defendant moved to dismiss his indictment on the ground that it failed to set forth sufficient facts upon which he could be convicted of the crime alleged. *Janvrin*, 121 N.H. at 371. Following a new indictment, he argued that double jeopardy barred his retrial. *Id.* In holding that no double jeopardy bar existed, we noted that "a mistrial granted even at the request of the prosecution because of a faulty indictment does not bar retrial if the declaration of a mistrial is required by 'manifest necessity' or the 'ends of public justice.' " *Id.*; *see Somerville*, 410 U.S. at 469. When the indictment is dismissed because it is defective and not on the merits, "there is no double jeopardy barrier to the defendant's retrial unless the prosecutorial error that prompted the defendant's motion was 'intended to provoke' the motion or was otherwise 'motivated by bad faith or undertaken to harass or prejudice' the defendant." *Janvrin*, 121 N.H. at 371-72 (quoting *Lee v. United States*, 432 U.S. 23, 33-34 (1977) (brackets and ellipses omitted). In *Janvrin*, because the drafting error "was at most an act of negligence," and not the type of overreaching that invokes double jeopardy protection, we held there was no bar to retrial. *Id.* at 372.

Here, the defendant argues that the error in the indictments issued on the day of trial was not an act of negligence, but rather a conscious, tactical decision made to ease the State's burden at trial; *i.e.*, the State was unsure whether it could prove penetration at trial. He argues that the circumstances here are similar to those in *Downum v. United States*, 372 U.S. 734, 735 (1963), thus requiring reversal. We disagree.

In *Downum*, the prosecution announced that it was ready to proceed with trial even though a key witness for two of the six counts was not present, and had not been subpoenaed. *Downum*, 372 U.S. at 735. Only after the jury was selected and sworn did the prosecution ask that the jury be discharged. *Id.* The defendant moved to dismiss the two counts to which the witness would testify and proceed to trial on the remaining four. *Id.* At the prosecution's request, however, the trial judge discharged the jury. *Id.* After a new trial began two days later, the defendant's plea of former

jeopardy was denied and he was convicted. *Id.* On appeal, the United States Supreme Court reversed his conviction, reasoning that the prosecution had made a calculated choice in the face of a known danger, and could have avoided the situation altogether. *Id.* at 737-38. The Court also considered the fact that the State and trial judge refused to consider any lesser alternatives to a mistrial, such as proceeding on the remaining four counts. *Id.* at 737.

The case before us is distinguishable upon two grounds. First, the State's choice to proceed with the indictments issued on the day of trial does not rise to the level of misconduct in *Downum.* The prosecution in *Downum* knew full well that the witness was absent and nonetheless allowed the jury to be selected and sworn, essentially proceeding without sufficient evidence to convict. *Id.* at 735. Although the State here made a tactical choice to amend the indictments, it did not do so knowing that the indictments were defective under the *Ex Post Facto* Clause, and thus the mistrial did not operate as "a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case." *Somerville*, 410 U.S. at 469. Rather, the error here is more akin to that in *Janvrin* and *Somerville*, where the indictments themselves were insufficient to charge a crime, as opposed to charging a crime for which the State could not provide any evidence. *Somerville*, 410 U.S. at 459; *Janvrin*, 121 N.H. at 371. The trial court here aptly described the events below as "a series of misadventures by the State," but found that the State's actions were not the type of misconduct preventing a finding of manifest necessity. Because the prosecutorial error that prompted the defendant's motion was not "intended to provoke the motion or . . . otherwise motivated by bad faith or undertaken to harass or prejudice the defendant," *Janvrin*, 121 N.H. at 371-72 (quotation omitted), we agree with the trial court.

Second, the trial court here considered the parties' arguments and alternative remedies before declaring a mistrial. In contrast, one of the determining factors in *Downum* was the fact that the trial court and prosecutor failed to consider available alternatives to mistrial or weigh the competing interests at stake. *Downum*, 372 U.S. at 737. Here, before asking for a mistrial, the State considered charging the defendant with felonious sexual assault (FSA) as a lesser included offense, or entering a *nolle prosequi.* Neither option was available, however, because on these facts FSA is not a lesser included offense of AFSA, *see State v. Smith*, 127 N.H. 433, 437 (1985), and because entering a *nolle prosequi* would have barred re-indictment on double jeopardy grounds, *see State v. Pond*, 133 N.H. 738, 741 (1990). After considering those options, the trial court balanced the State's interest in the prosecution of crimes against the

defendant's double jeopardy protections. Noting the lack of alternatives and the absence of misconduct by the State, the trial court found that manifest necessity required a mistrial.

The record clearly indicates that the trial court made the appropriate inquiry before finding manifest necessity, and we cannot conclude that its decision was an unsustainable exercise of discretion. The post-jeopardy dismissal, therefore, does not bar the defendant's retrial on double jeopardy grounds.

Because we conclude that the Federal Constitution provides the defendant no greater protection than does the State Constitution, *see Gould*, 144 N.H. at 416, we reach the same result under the Federal Constitution

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS, J., concurred.