NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2012-561


THE STATE OF NEW HAMPSHIRE

v.

BARION PERRY

Argued: October 16, 2013
Opinion Issued: May 22, 2014

Michael A. Delaney, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


David M. Rothstein, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


BASSETT, J. The defendant, Barion Perry, appeals his convictions following a trial in Superior Court (Kissinger, J.) for theft by unauthorized taking, RSA 637:3 (2007), and burglary, RSA 635:1 (2007), arguing that the Superior Court (Nicolosi, J.) erred in denying his motion to dismiss the indictments against him on double jeopardy grounds. We affirm.

The record supports the following facts. Detectives interviewed the defendant following his arrest for theft and burglary. The interview was recorded. Prior to the defendant's first trial, counsel for the defendant and the

State agreed that certain statements made by the defendant during the interview should be redacted before the recording was played for the jury. Shortly after the State played a redacted version of the recording, defense counsel advised the trial court that three of the statements that should have been redacted were not, in fact, redacted. Although the quality of the recording was poor and portions of the interview transcript were marked "inaudible," the parties agreed that, in his first statement, the defendant apparently referred to his prior conviction for theft and burglary. In the second statement, the defendant referred to his "PO," apparently meaning his parole officer. The final statement contained a reference to prison. Defense counsel acknowledged that he had failed to request that the State redact the first two statements. However, he had requested that the third statement be redacted, but the State failed to do so.

The trial court conducted a colloquy with the defendant, during which he told the court that he had noticed "at least four or five of the jurors" looking at him when the statements were played and that he believed that they heard the references. The court stated that she had not heard the statements due to the poor quality of the recording and the acoustics in the courtroom. Nonetheless, because the attorneys and the defendant had heard the statements, the trial court assumed that at least one of the jurors also had heard them.

Defense counsel requested neither a mistrial nor a curative instruction. During the colloquy, the defendant stated that, although he did not want to be convicted because the jury heard potentially prejudicial statements in the interview, he wanted to go forward with the trial because he had "other options that ha[d] nothing to do with a mistrial." The State urged that "a mistrial be declared based on manifest necessity," notwithstanding the defendant's decision not to request one, because the statements were extremely prejudicial and affected the defendant's right to a fair trial.

Because the court was concerned that defense counsel could not effectively advise the defendant about a mistrial as counsel had failed to "mark" two of the statements for redaction prior to trial, it considered assigning independent counsel to speak with the defendant about the mistrial request. The court ultimately concluded, however, that manifest necessity required a mistrial because the jury heard "damaging," "inflammatory" information that a curative instruction would not have been able to address adequately. The court did not assign independent counsel because it concluded that, given the prejudicial nature of the unredacted statements, it "could be ineffective assistance of counsel" for another lawyer to advise the defendant not to seek a mistrial. The trial court declared a mistrial over the defendant's objection and scheduled a new trial.

Prior to the second trial, the defendant moved to dismiss the indictments with prejudice. He argued that the mistrial was not supported by manifest necessity, and, therefore, that the double jeopardy provisions of the New Hampshire and United States Constitutions barred retrial. See N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V. The State objected, arguing that manifest necessity supported the court's declaration of mistrial because, among other things, the defendant would have had a successful ineffective assistance of counsel claim had the first trial been completed. The trial court agreed with the State, and denied the defendant's motion to dismiss.

On appeal, the defendant argues that "[t]he trial court erred in ruling that its decision to declare a mistrial over [the defendant's] objection was supported by manifest necessity" because the circumstances failed to satisfy the "high degree" of necessity required by the law. He specifically argues that "[t]he fact that the jury might have heard prejudicial information is insufficient to override [his] valued right to a trial before a single tribunal." He asserts that "the court was not authorized to end [his] trial over his objection" because he should have been able to "retain primary control" over the course of his trial, even following the introduction of prejudicial information. (Quotation omitted.) He further argues that the trial court erred by assuming that the jury heard the statements and by concluding that defense counsel was to blame for introducing the prejudice.

We first address the defendant's double jeopardy claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983); see State v. Howell, 158 N.H. 717, 719 (2009). "The Double Jeopardy Clause of the New Hampshire Constitution prohibits the State from placing a defendant in jeopardy more than once for the same offense." State v. Ojo, 165 N.H. ___, ___ (decided February 21, 2014). "A defendant is placed in jeopardy when a jury is empaneled and sworn, or, in the case of a bench trial, when the judge begins to hear evidence." Id. (citation omitted). "After jeopardy attaches for a particular offense, it 'terminates' — thereby prohibiting retrial for the same offense — upon a judgment of acquittal or conviction, or upon an unnecessarily declared mistrial preventing either judgment." Id. (citation, quotation, and ellipses omitted).

"A defendant normally has the right to complete a trial before a particular tribunal: either the same chosen jury, in a jury trial; or the same judge, in a bench trial." Id. (quotation omitted).

Such a right exists because the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of

3

anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Id. (quotation omitted).

"The right to complete a trial before a particular tribunal is not absolute, however, and must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Id. (quotation omitted). "One such instance occurs when a trial court, with the greatest caution, under urgent circumstances, and for very plain and obvious causes, declares a mistrial over the objection of the defendant." Id. (quotation omitted). "The Double Jeopardy Clause does not bar retrial after a mistrial when the defendant consents to the mistrial, or, if he objects, upon a finding of the trial court that there is manifest necessity for the act, or that the ends of public justice would otherwise be defeated." Id. (quotation omitted). "Under these circumstances, jeopardy does not terminate but instead continues." Id.

"Although a high degree of necessity is required before a mistrial is declared, 'manifest necessity' is a variable standard which cannot be applied mechanically." State v. Gould, 144 N.H. 415, 417 (1999). "Determining whether manifest necessity exists to justify the declaration of a mistrial requires a balancing of competing concerns: the defendant's interests in completing his trial in a single proceeding before a particular tribunal versus the strength of the justification for a mistrial." State v. Solomon, 157 N.H. 47, 52 (2008) (quotation omitted). "A trial court must therefore take all circumstances into account, and should allow counsel to comment as well as consider alternatives before declaring a mistrial." Howell, 158 N.H. at 720.

We have cautioned trial courts not to terminate trials too quickly, and have encouraged them to discuss lesser sanctions with counsel and to take time for reflection. Petition of Brosseau, 146 N.H. 339, 341 (2001). "Where the trial court clearly indicates on the record its findings and reasoning, we generally defer to its declaration of a mistrial." Howell, 158 N.H. at 720. "However, if the trial court unsustainably exercised its discretion in concluding that manifest necessity required a mistrial, then the Double Jeopardy Clause will bar retrial." Solomon, 157 N.H. at 51. "If . . . the trial court fails to make any findings or state its reasoning on the record, or otherwise fails to exercise prudence in declaring a mistrial, our deference is diminished." Howell, 158 N.H. at 720. "In such instances, because a mistrial is of such gravity and implicates such a fundamental constitutional right, we will defer to a trial court's finding of manifest necessity only where the record affirmatively supports it." Id. at 720-21 (quotation, brackets, and ellipses omitted).

Here, the trial court made its findings and stated its reasoning on the record, and it "did not act precipitously" in declaring a mistrial. Petition of Brosseau, 146 N.H. at 341. After learning that the jury might have heard prejudicial information, the trial court directed the attorneys to listen to the recording in order to determine whether the challenged statements were audible. The next day the court discussed the potential prejudice and possible courses of action with counsel for both parties, and with the defendant. The trial court not only considered the general prejudicial effect of the statements, but also, in its order declaring a mistrial, addressed the statements' impact upon the defense theory of misidentification. Ultimately, the trial court concluded that a non-prejudicial instruction could not be fashioned; that the unredacted statements created actual, incurable prejudice; and that it "could be ineffective assistance of counsel" for an independent attorney to advise the defendant not to seek a mistrial. The trial court made these findings and rulings on the record; accordingly, we review its decision for an unsustainable exercise of discretion. See Howell, 158 N.H. at 721.

The defendant argues that the trial court erred by concluding that a mistrial was required because "prejudicial information had been conveyed to the jury and defense counsel was to blame." He further contends that even if the jury heard damaging testimony, he should have had the opportunity to continue with the trial. However, "[w]hile reasonable minds might differ on whether 'manifest necessity' existed here, we are not persuaded that the court acted unreasonably or without plain and obvious causes." Petition of Brosseau, 146 N.H. at 342.

Before declaring a mistrial, the trial court "considered the parties' arguments," Howell, 158 N.H. at 722, and "balanc[ed] . . . [their] competing concerns," Solomon, 157 N.H. at 52; see also Howell, 158 N.H. at 722. During the colloquy at trial, the defendant expressed his desire to complete the trial before the assigned jury, stating that he had "other options that ha[d] nothing to do with a mistrial at all." In his motion to dismiss the indictments on double jeopardy grounds, the defendant clarified this point by explaining that, "[a]side from the three erroneously admitted statements . . . [,] the [first] trial had gone well for [him]." He further explained that the court had made several rulings favorable to him after a State's witness failed to appear. These rulings included a decision to allow him to elicit testimony from a police detective that the missing witness had failed to positively identify the defendant in a lineup. The defendant argued that this information was presented to the jury "as favorably as the defense could reasonably have hoped," and that "it [was] highly unlikely this evidence [would] come in nearly as favorably at a retrial." See Solomon, 157 N.H. at 51 (noting that United States Supreme Court has stated that mistrial decision must consider defendant's interest in proceeding to a verdict with "a tribunal he might believe to be favorably disposed to his fate").

5

The defendant also argued that granting a mistrial infringed on his right to a speedy trial because he was not entitled to pretrial credit for his time in prison while awaiting resolution of the theft and burglary charges. He argued that he could not progress toward being paroled while the charges were pending, and that the mistrial prolonged the time required for him to move through the system. Thus, the defendant articulated specific reasons for objecting to the mistrial and for wishing to proceed with the empaneled jury, notwithstanding the potential prejudice to his case. See id.

The trial court, however, sustainably exercised its discretion in balancing the defendant's interest in continuing the trial against "the strength of the justification for a mistrial" following the introduction of prejudicial information. Id. at 52. "It is well-settled that an incurable prejudice may result when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense." State v. Willey, 163 N.H. 532, 538 (2012) (quotations omitted). "The infusion of such evidence into a trial is probably only equaled by a confession in its prejudicial impact upon a jury." Id. (quotations omitted). "Accordingly, we have held that a mistrial is appropriate when a defendant's prior criminal conduct has been unambiguously conveyed to the jury." State v. Russo, 164 N.H. 585, 589-90 (2013) (quotation omitted).

"In cases in which we have held that a mistrial was warranted, we have often looked to whether the jury was improperly exposed to testimony concerning prior criminal acts similar to the acts charged." Id. at 590; see, e.g., State v. Kerwin, 144 N.H. 357, 360-61 (1999) (holding that alleged sexual assault victim's statement that "that man raped some girl" warranted mistrial because statement "unambiguously conveyed to the jury the fact that the defendant allegedly had engaged in similar culpable conduct"); State v. LaBranche, 118 N.H. 176, 177 (1978) (holding that witnesses' testimony about defendant's pending charge of attempted aggravated felonious sexual assault during trial on separate charge of aggravated felonious sexual assault was "inadmissible and sufficiently prejudicial to require a new trial"). "At the heart of these cases is a concern about the unfairness of allowing the jury to hear evidence of other crimes committed by the defendant that are similar to that for which the defendant is on trial." Russo, 164 N.H. at 590.

In this case, the jury heard evidence of the defendant's prior criminal conduct. In isolation, the individual references may have been ambiguous and might not have required a mistrial given that they were not made in the context of a specific charge. See id. (holding mistrial not required because testimony did not identify any specific prior charge or conviction and therefore did not unambiguously convey defendant's prior criminal conduct). However, when the three statements are considered together, the jury might well have concluded that the defendant had been in prison and had a parole officer as a result of his prior theft and burglary charge. This conclusion would have been

6

reasonable because the three statements were made during a single interview with the defendant.  Thus, because the defendant was on trial for theft and burglary, the unredacted statements exposed the jury to inadmissible evidence concerning prior criminal acts similar to the charged crimes.  See id.  The jury, consequently, was exposed to the type of information that we have previously found sufficiently prejudicial to require a mistrial.  See State v. Woodbury, 124 N.H. 218, 219, 221 (1983) (detective's testimony regarding identical charge that had been previously filed against defendant required mistrial).  Furthermore, we cannot conclude that the trial court unreasonably found that "the prejudicial effect of this information could not be cured by instruction to the jury."  Thus, the trial court did not err when it concluded that the defendant could not "have a fair trial with that information in the jury's hands."  See id. at 221 (when testimony revealed to jury inadmissible evidence of identical charge, "cautionary or limiting instructions would not have been able to erase the taint of the prejudicial evidence and would have served only to emphasize the prejudice" (quotation omitted)).

We disagree with the defendant's argument that the trial court erred to the extent that it considered the "benefit" to the defendant in "receiv[ing] a fair trial."  We have previously observed that a defendant's "right to complete a trial before a particular tribunal is not absolute . . . and must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."  Ojo, 165 N.H. at ___ (quotation omitted); see Howell, 158 N.H. at 720.  Consequently, we conclude that the trial court did not unsustainably exercise its discretion by assessing whether the defendant could receive a fair trial after the jury was exposed to prejudicial information.  See Howell, 158 N.H. at 720-21.

The defendant also argues that, given the poor quality of the audio recording, the trial court erred in assuming that the jury heard and comprehended the "brief, isolated comments."  He asserts that, if the jury did not, in fact, hear or understand the statements in the recording, then the trial court "declared a mistrial over [his] objection for no reason."

Although we have previously held that testimony of prior criminal acts must be unambiguously revealed to the jury in order to warrant a mistrial, we have considered ambiguity only as it is attributable to the substance of the testimony.  See State v. Gibson, 153 N.H. 454, 460 (2006) ("Where the jury could draw several inferences from challenged testimony, one of which is innocuous, the testimony is not so prejudicial as to be incurable by contemporaneous jury instructions."); see also Willey, 163 N.H. at 538 (concluding that trooper's statement that he had been "investigating an unrelated matter" "did not unambiguously reveal evidence of prior criminal acts by the defendant"); State v. Carbo, 151 N.H. 550, 554 (2004) (holding that vague references to defendant's other conduct and statement expressing

7

skepticism about whether defendant had engaged in unlawful conduct "did not unambiguously reveal evidence of specific bad acts").

Here, the purported ambiguity arises not from the content of the statements, but as a result of the uncertainty as to whether the jury actually heard and comprehended the recorded statements. "When reviewing a trial court's ruling on a motion for a mistrial, we recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate." Carbo, 151 N.H. at 554. As the trial court observed, it was not able to hear any of the potentially prejudicial references during the playing of the recording for the jury. However, it assumed that one or more of the jurors may have heard the statements because the defendant and the attorneys heard them. "[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected" by the statements. Arizona v. Washington, 434 U.S. 497, 511 (1978).

We note that it was the defendant himself who told the court that he noticed "at least four or five of the jurors" looking at him when the statements were played, and that he believed that the jury had heard the statements. The defendant now argues that his perception of the jurors' reactions and gestures "may have been skewed." While it may be true that the defendant's status as the accused may have influenced his perception of the jurors' reactions, we cannot conclude that the trial court erred by considering his observations of the jury in assessing whether a mistrial was warranted. Nor do we agree with the defendant's contention that the trial court erred by not listening to the recording before assuming that the jurors heard the statements. Accordingly, we find no error in the trial court making the assumption that one or more jurors heard the statements.

We are equally unpersuaded by the defendant's argument that "[t]he trial court's finding that defense counsel was to blame for the jury hearing the passages in question is . . . unsupported by the record." The defendant argues that, although "[c]onduct by defense counsel can be a factor in the trial court's assessment of whether to declare a mistrial," the failure of his trial counsel to request that the State redact prejudicial passages was "not the type of misconduct . . . that has led courts to rule that a retrial is permissible." See Petition of Brosseau, 146 N.H. at 342 ("It is especially important to our analysis that the defendant created this predicament by interjecting into his testimony evidence that he had been told was inadmissible."); see also Washington, 434 U.S. at 513. This argument, however, stems from a misunderstanding of the trial court's rationale for finding manifest necessity. Although the court considered defense counsel's failure to request that some of the statements be redacted, it did so only in the context of determining whether defense counsel

8

could adequately advise his client about the mistrial. The trial court considered asking independent counsel to speak with the defendant about a potential mistrial. Ultimately, however, the court decided that it "could be ineffective assistance of counsel" for another lawyer to advise the defendant not to move for a mistrial, and that manifest necessity warranted a mistrial based upon the prejudice to the defendant. Accordingly, we conclude that the trial court did not err on this ground because defense counsel's failure to request the redactions did not lead to the court's decision to declare a mistrial.

Given the prejudicial nature of the three statements, particularly when taken together, the trial court sustainably exercised its discretion when it concluded that "the prejudicial effect of this information could not be cured by instruction to the jury," and that the defendant could not receive a fair trial with the jurors having been exposed to the information. See Petition of Brosseau, 146 N.H. at 342. We therefore hold that the trial court did not err in finding that manifest necessity warranted a mistrial.

We disagree with the defendant to the extent that he argues that, notwithstanding manifest necessity, he should have been able to proceed to a verdict even if the jury heard prejudicial evidence. A defendant has the right to proceed to verdict notwithstanding prejudice to his case only "in the absence of circumstances of manifest necessity requiring a sua sponte judicial declaration of mistrial." United States v. Dinitz, 424 U.S. 600, 608 (1976); see also State v. Paquin, 140 N.H. 525, 528 (1995) (holding that trial court can declare mistrial over defendant's objection "only if there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated" (quotation omitted)). In this case, manifest necessity supported the trial court's decision to order a mistrial; therefore, the defendant's interest in controlling the course of his trial was not dispositive. Cf. Moussa Gouleed v. Wengler, 589 F.3d 976, 985 (8th Cir. 2009) (noting, in habeas corpus context, that defendant's "interest in controlling the course of his trial was not dispositive" because "there was manifest necessity to grant a new trial").

The record indicates that the trial court sustainably exercised its discretion in finding that manifest necessity required a mistrial. Consequently, the mistrial declaration did not bar the defendant's retrial on double jeopardy grounds. See Howell, 158 N.H. at 723. Because we conclude that the Federal Constitution provides the defendant no greater protection than does the State Constitution under these circumstances, we reach the same result under the Federal Constitution. See id.; Dinitz, 424 U.S. at 606-07.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.