# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0347, <u>State of New Hampshire v. Michael S. Twamley</u>, the court on August 22, 2019, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. In this interlocutory appeal, <u>see</u> <u>Sup. Ct. R.</u> 8, the defendant, Michael S. Twamley, challenges an order of the Superior Court (<u>MacLeod</u>, J.) denying his motion to dismiss following the trial court's declaration of a mistrial. He argues that the trial court declared the mistrial in the absence of manifest necessity and, therefore, a retrial would violate the Double Jeopardy Clauses of the New Hampshire and United States Constitutions. <u>See</u> N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V. Because the defendant failed to timely object to the trial court's mistrial declaration in order to preserve his challenge, we affirm.

The interlocutory record provides the following facts. The defendant was indicted on one count of driving after certification as a habitual offender. <u>See</u> RSA 262:23, I (Supp. 2018). Prior to trial, the defendant filed an offer to stipulate to his habitual offender status, which constitutes an element of the indicted offense. <u>See</u> <u>State v. Riendeau</u>, 160 N.H. 288, 294 (2010). The offer of stipulation stated: "[T]he habitual offender certification would put into evidence matters that are prejudicial to the defendant. . . . By offering a stipulation . . . , those facts would not come before the jury and they would simply be asked to decide whether the defendant operated on a way . . . ." (Emphasis omitted.)

On the first day of trial, the trial court spoke with both parties about the stipulation prior to opening statements. The trial court confirmed that there was a stipulation as to the defendant's "status as a habitual offender." The State explained that it had instructed the only witness it planned to call to refrain from referencing the defendant's habitual offender status in his testimony. However, the trial court noted that, since the defendant was charged with driving after certification as a habitual offender, "at some point the jury is going to know that." The court also noted that the jury would likely learn of the defendant's habitual offender status during the reading of the indictment. The defendant indicated that he understood.

Following this discussion, the clerk swore in and read to the jury the crime charged in the indictment, including the allegation that the defendant was knowingly "under an order of the Director of the Division of Motor Vehicles . . . certifying him as a habitual offender" at the time he drove a motor vehicle

on a way.  The defendant did not object.  After the State rested, the trial court gave the parties its proposed jury instructions, which included the element alleging that the defendant had been certified as a habitual offender.

The following morning, the defendant objected to the trial court's proposed instructions prior to the resumption of the trial.  He argued that the proposed instructions did not comply with the agreed-upon stipulation and asserted that the purpose of the stipulation was to eliminate any reference to the defendant's habitual offender status.  The defendant added that he did not object when the court clerk read the entire indictment because he did not want to draw the jury's attention to it.  The trial court reminded the defendant that it had specifically confirmed with the parties that they had stipulated that the defendant had been a certified habitual offender on the day of the offense, and that he was aware of his certification.  The trial court then noted that it did not understand how the defendant could believe that the jury would not "hear the elements of the crime for which [he] stands accused."

In response, the defendant expressed a desire to withdraw his stipulation.  The State noted that its understanding of the stipulation was that it "would not have to prove that particular element and not call those witnesses in."  The State also explained that if the defendant withdrew his stipulation, the State would seek to reopen its case.  However, noting that the case was scheduled for a one and a half day trial, the State explained that it had not contacted any witnesses who could testify to the defendant's habitual offender status and questioned whether those witnesses would be able to appear in court to testify that same day.

The trial court took a recess, after which it sua sponte declared a mistrial.  In so doing, the court informed the parties that it had "come to the reluctant conclusion that this case cannot proceed further."  The court explained that there had been no "meeting of the minds" between the State and the defendant as to the effect of the stipulation.  It reiterated that the jury must be informed of the crime charged, and observed that, if the court allowed the defendant to withdraw his stipulation, the State would be "greatly prejudiced" because, in reliance on the stipulation, it had rested without adducing evidence on at least one element of the crime charged.

The court then gave the defendant an opportunity to respond.  The defendant did not object to the court's mistrial declaration.  Instead, he challenged the trial court's reasoning relating to the jury instructions, but agreed that, if he withdrew his stipulation, the State would be placed in an "untenable position."  He further stated that, if he elected to object to the court's ruling, he would do so in writing.  The trial court gave the defendant five days to object to its ruling.  The State noted that it did not object to the mistrial declaration.

2

Eleven days later, the court received the defendant's response, in which he objected to the court's mistrial declaration and requested dismissal of the indictment. The defendant argued that there was not manifest necessity to declare a mistrial and, therefore, the Double Jeopardy Clauses of the New Hampshire and United States Constitutions barred retrial. The trial court, noting that the defendant did not object to the mistrial at the time it was declared, considered the defendant's filing "to be in effect a request to reconsider its oral mistrial order." The court denied the defendant's motion. The defendant filed a motion to reconsider, and, subsequently, a request for an interlocutory transfer. The trial court denied the defendant's motion to reconsider and granted the interlocutory transfer request. This appeal followed.

The defendant argues that there was not manifest necessity to declare a mistrial; thus the court erred by denying his motion to dismiss because "retrial would violate [his] right against double jeopardy." We first address the defendant's double jeopardy claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983); State v. Perry, 166 N.H. 297, 301 (2014). The Double Jeopardy Clause of the New Hampshire Constitution prohibits the State from placing a defendant in jeopardy more than once for the same offense. Perry, 166 N.H. at 301. A defendant is placed in jeopardy when a jury is empaneled and sworn. Id. After jeopardy attaches for a particular offense, it 'terminates' — thereby prohibiting retrial for the same offense — upon a judgment of acquittal or conviction, or upon an unnecessarily declared mistrial preventing either judgment. Id.

A defendant normally has the right to complete a trial before a particular tribunal: either the same chosen jury, in a jury trial; or the same judge, in a bench trial. Id. The right to complete a trial before a particular tribunal is not absolute, however, and must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. Id. at 302. One such instance occurs when a trial court, with the greatest caution, under urgent circumstances, and for very plain and obvious causes, declares a mistrial over the objection of the defendant. Id. The Double Jeopardy Clause does not bar retrial after a mistrial when the defendant consents to the mistrial, or, if he objects, upon a finding of the trial court that there is manifest necessity for the act or that the ends of public justice would otherwise be defeated. Id. Under these circumstances, jeopardy does not terminate but instead continues. Id.

The defendant argues that there was not manifest necessity to declare a mistrial because the trial court could have: (1) denied his request to withdraw his stipulation; (2) granted his request to omit from the jury instructions any reference to the phrase "habitual offender"; or (3) allowed the defendant to withdraw his stipulation and the State to reopen its case. The State counters that this argument is not preserved because the defendant failed to raise it at

the time the court declared the mistrial.  We agree that the defendant's argument is not preserved, and decline to address it.

In general, a contemporaneous and specific objection is required to preserve an issue for appellate review.  State v. Kelly, 160 N.H. 190, 194 (2010).  The purpose underlying our preservation rule is to afford the trial court an opportunity to correct any error it may have made before those issues are presented for appellate review.  State v. Mouser, 168 N.H. 19, 26 (2015); see also State v. Fortier, 146 N.H. 784, 788 (2001) (noting that preservation rule allows trial court to correct errors "as they occur").  The defendant, as the appealing party, bears the burden of demonstrating that his appellate argument is preserved.  See State v. Batista-Salva, 171 N.H. 818, 822 (2019).

Here, the argument underlying the defendant's double jeopardy claim is that the trial court declared a mistrial without manifest necessity.  The defendant, however, did not contemporaneously object to the trial court's mistrial declaration, and, thus, the trial court did not have the opportunity to correct the error he asserts on appeal.  Nevertheless, the defendant contends that his appellate argument was preserved by his written objection and motion to dismiss, as well as his subsequent motion to reconsider.  We disagree.

Although the defendant argued in his objection and motion to dismiss that there was not manifest necessity for a mistrial, this pleading was not received by the court until eleven days after the court declared the mistrial.  Thus, it is beyond dispute that the trial court did not have the opportunity to correct its alleged error because the defendant did not object to the mistrial declaration until eleven days after the court issued its ruling.  See Transmedia Restaurant Co. v. Devereaux, 149 N.H. 454, 458-59 (2003) (objection to jury instruction raised in post-trial motion for reconsideration not timely); see also United States v. DiPietro, 936 F.2d 6, 11 (1st Cir. 1991) (noting that, had the defendant objected to mistrial at time it was declared, "the court could have asked the jury to remain while reconsidering its decision"); United States v. Crosley, 634 F. Supp. 28, 32 (E.D. Pa. 1985) (objection to mistrial untimely when made after jury had been discharged).  That the trial court addressed and rejected the defendant's untimely objection on the merits does not change our conclusion.  See State v. Croft, 142 N.H. 76, 80 (1997).

To the extent that the defendant contended at oral argument that, based upon our decision in State v. Bertrand, 133 N.H. 843 (1991), he was not required to object at the time of the trial court's mistrial declaration in order to preserve his manifest necessity argument, we decline to address it because the defendant first raised this substantive argument at oral argument.  We generally decline to address issues raised for the first time during oral argument.  See In the Matter of Gendron & Plaistek, 157 N.H. 314, 319 (2008) (and cases cited therein).  "There is a fundamental unfairness in not adequately and fully presenting one's position in the brief and waiting until oral argument

4

to clarify it." <u>Id</u>. at 320 (quotation omitted).  Although we retain the discretion to consider arguments raised for the first time at oral argument, <u>see</u> <u>State v. Tucker</u>, 145 N.H. 723, 724 (2001), we decline to exercise that discretion here when the trial court expressly found that the defendant failed to object to its mistrial ruling and, accordingly, the application of <u>Bertrand</u> to this case was clearly before the parties prior to this appeal.  Therefore, we affirm the trial court's order denying the defendant's motion to dismiss on double jeopardy grounds.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances.  <u>Arizona v. Washington</u>, 434 U.S. 497, 503-08 (1978); <u>Perry</u>, 166 N.H. at 301-02. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

<u>Affirmed</u>.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,**
**Clerk**
